UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DWAYNE BALDWIN, JAMES CAHALAN, BRUCE GINSBURG, LARY ROSENBLATT, OPHILE NORTHINGTON, JOSEPH FOGLIO, RICHARD ODESS, SCOTT LEBLEAU, CHRIS WHITE, JODI WOLFE, JILL LEAVENWORTH, EDGARDO MONTALVO, CHRISTOPHER HARFORD, DAVID PHILLIPS, MAUREEN ADAMS, PATRICK HAGGERTY, PENNY HUDSON, ALEX PAGNOTTA, SAUVEUER CHARLES VALESCO, BARBARA TRAUGH, RANDALL TRAUGH, RITA CONTE, DANIAL TING, LANCE COUMERILH, MARK YAFCHAK, GLENN GOULDING, RICHARD RADACK, ROGER CROOKS, GARY JONES, JORGE SERRANO MAGRIS, EDITH MCREE BOWLES, CLEO HOLZ, JOSEPH R. KAY III, CATHERINE QUINN-KAY, AIMEE FRENZEL-DREW, MARK WEINER, BENGY SCHMIDT, KENT MCMILLAN, NATALIE GOTTLIEB, SHELLEY DAVIS, DONNA CORDOVA, RUBEN HAMMER, DAN AFRICK, ALLEN CRAIG, MICHAEL RENKEN, DORSE DALE GREEN, BOB IWAN, ANNILAURIE CAMMACK, JOHN CAMMACK, JOHN TENNERY and RICHARD GRISHAM, on behalf of themselves and all others similarly situated, | Case No.    2:21-cv-1923 <br><br> CLASS ACTION COMPLAINT <br><br> DEMAND FOR JURY TRIAL |
| *Plaintiffs*, | |
| v. | |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | |
| *Defendants*. | |

Plaintiffs Dwayne Baldwin ("Plaintiff Baldwin"), James Cahalan ("Plaintiff Cahalan"), Bruce Ginsburg ("Plaintiff Ginsburg"), Lary Rosenblatt    ("Plaintiff Rosenblatt"), Ophile Northington ("Plaintiff Northington"), Joseph Foglio ("Plaintiff Foglio"), Richard Odess ("Plaintiff Odess"), Scott LeBleau ("Plaintiff LeBleau"), Chris White ("Plaintiff White"), Jodi Wolfe ("Plaintiff Wolfe"), Jill Leavenworth    ("Plaintiff Leavenworth"), Edgardo Montalvo ("Plaintiff Montalvo"), Christopher Harford    ("Plaintiff Harford"), David Phillips ("Plaintiff Phillips"), Maureen Adams    ("Plaintiff Adams"), Patrick Haggerty ("Plaintiff Haggerty"), Penny Hudson ("Plaintiff Hudson"), Alex Pagnotta ("Plaintiff Pagnotta"), Sauveuer Charles Valesco ("Plaintiff Valesco"), Barbara Traugh    ("Plaintiff Barbara Traugh"), Randall Traugh ("Plaintiff Randall Traugh"), Rita Conte ("Plaintiff Conte"), Danial Ting ("Plaintiff Ting"), Lance Coumerilh ("Plaintiff Coumerilh"), Mark Yafchak ("Plaintiff Yafchak"), Glenn Goulding ("Plaintiff Goulding"), Richard Radack ("Plaintiff Radack"), Roger Crooks ("Plaintiff Crooks"), Gary Jones ("Plaintiff Jones"), Jorge Serrano Magris ("Plaintiff Magris"), Edith McRee Bowles ("Plaintiff Bowles"), Cleo Holz  ("Plaintiff Holz"), Joseph R. Kay III  ("Plaintiff Kay"), Catherine Quinn-Kay ("Plaintiff Quinn-Kay"), Aimee Frenzel-Drew ("Plaintiff Frenzel-Drew"), Mark Weiner ("Plaintiff    Weiner"), Bengy Schmidt ("Plaintiff Schmidt"), Kent McMillan ("Plaintiff McMillan"), Natalie Gottlieb ("Plaintiff Gottlieb"), Shelley Davis ("Plaintiff Davis"), Donna Cordova ("Plaintiff Cordova"), Ruben Hammer ("Plaintiff Hammer"), Dan Africk ("Plaintiff Africk"), Allen Craig ("Plaintiff Craig"), Michael Renken ("Plaintiff Renken"), Dorse Dale Green ("Plaintiff Green"), Bob Iwan ("Plaintiff Iwan"), Annilaurie Cammack ("Plaintiff A. Cammack"), John Cammack ("Plaintiff J. Cammack"), John Tennery ("Plaintiff Tennery") and Richard Grisham ("Plaintiff Grisham") (collectively, "Plaintiffs"), themselves and the class and subclasses of all others similarly situated as defined below, for their complaint against defendants Koninklijke

2

Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and subclasses of purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips disclosed it had determined that there were risks that the PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain circumstances.  On June 14, 2021, Philips issued a recall (the "Recall") of devices containing PE-PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation into particles which may enter the device's pathway and be ingested or inhaled by users of devices which contain PE-PUR Foam, as well as off-gassing certain chemicals.  Philips recommended that patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.      On July 22, 2021, the United States Food and Drug Administration classified the recall of Philips devices containing PE-PUR Foam as a Class 1 recall, the most serious type of recall reserved for recalls of devices that may cause serious injuries or death.

4.      Plaintiffs all owned or leased Philips CPAP, BiPAP, or mechanical ventilator devices prior to June 14, 2021. Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices had been recalled by Philips due to the presence of a dangerous PE-PUR Foam that could cause them to suffer from adverse health effects, including, *inter alia*,

cancer. Plaintiffs have been advised by Philips to discontinue use of their devices. Plaintiffs must now spend a substantial amount of time and incur substantial expenses to replace the device.

5.      Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam and the need for ongoing medical monitoring on behalf of themselves and the proposed Class and Subclasses.

## **PARTIES**

6.      Plaintiff Dwayne Baldwin is a citizen and resident of Illinois.

7.      Plaintiff James Cahalan is a citizen and resident of Texas.

8.      Plaintiff Bruce Ginsburg is a citizen and resident of New York.

9.      Plaintiff Lary Rosenblatt is a citizen and resident of Connecticut.

10.      Plaintiff Ophile Northington is a citizen and resident of Virginia.

11.      Plaintiff Joseph Foglio is a citizen and resident of California.

12.      Plaintiff Richard Odess is a citizen and resident of New Hampshire.

13.      Plaintiff Scott LeBleau is a citizen and resident of Louisiana.

14.      Plaintiff Chris White is a citizen and resident of Alabama.

15.      Plaintiff Jodi Wolfe is a citizen and resident of Wyoming.

16.      Plaintiff Jill Leavenworth is a citizen and resident of Connecticut.

17.      Plaintiff Edgardo Montalvo is a citizen and resident of Illinois.

18.      Plaintiff Christopher Harford is a citizen and resident of New Jersey.

19.      Plaintiff David Phillips is a citizen and resident of Texas.

20.      Plaintiff Maureen Adams is a citizen and resident of Connecticut.

21.    Plaintiff Patrick Haggerty is a citizen and resident of Minnesota.

22.    Plaintiff Penny Hudson is a citizen and resident of Virginia.

23.    Plaintiff Alex Pagnotta is a citizen and resident of Maryland.

24.    Plaintiff Sauveuer Charles Valesco is a citizen and resident of Washington.

25.    Plaintiff Barbara Traugh is a citizen and resident of Pennsylvania.

26.    Plaintiff Randall Traugh is a citizen and resident of Pennsylvania.

27.    Plaintiff Rita Conte is a citizen and resident of Connecticut.

28.    Plaintiff Danial Ting is a citizen and resident of Texas.

29.    Plaintiff Lance Coumerilh is a citizen and resident of Idaho.

30.    Plaintiff Mark Yafchak is a citizen and resident of New York.

31.    Plaintiff Glenn Goulding is a citizen and resident of Florida.

32.    Plaintiff Richard Radack is a citizen and resident of North Carolina.

33.    Plaintiff Roger Crooks is a citizen and resident of South Dakota.

34.    Plaintiff Gary Jones is a citizen and resident of Connecticut.

35.    Plaintiff Jorge Serrano Magris is a citizen and resident of Puerto Rico.

36.    Plaintiff Edith McRee Bowles is a citizen and resident of Virginia.

37.    Plaintiff Cleo Holz is a citizen and resident of Wisconsin.

38.    Plaintiff Joseph R. Kay III is a citizen and resident of New York.

39.    Plaintiff Catherine Quinn-Kay is a citizen and resident of New York.

40.    Plaintiff Aimee Frenzel-Drew is a citizen and resident of North Dakota.

41.    Plaintiff Mark Weiner is a citizen and resident of Rhode Island.

42.    Plaintiff Bengy Schmidt is a citizen and resident of Montana.

43.    Kent McMillan is a citizen and resident of Arizona.

44.     Natalie Gottlieb is a citizen and resident of Connecticut.

45.     Shelley Davis is a citizen and resident of Connecticut.

46.     Donna Cordova is a citizen and resident of Connecticut.

47.     Ruben Hammer is a citizen and resident of Florida.

48.     Dan Africk is a citizen and resident of Massachusetts.

49.     Allen Craig is a citizen and resident of Mississippi.

50.     Michael Renken is a citizen and resident of Nebraska.

51.     Dorse Dale Green is a citizen and resident of Oklahoma.

52.     Bob Iwan is a citizen and resident of Pennsylvania.

53.     Annilaurie Cammack is a citizen and resident of Alabama.

54.     John Cammack is a citizen and resident of Alabama.

55.     John Tennery is a citizen and resident of Alabama.

56.     Richard Grisham is a citizen and resident of Alabama.

57.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of Philips NA and Philips RS.

58.     Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips North America is a wholly-owned subsidiary of Koninklijke Philips N.V. Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

59.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296.

Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

60.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

61.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. §1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

62.     The Court has personal jurisdiction over the Defendants. Defendants transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District.  The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## FACTUAL BACKGROUND

**I.     Continuous Positive Airway Pressure Therapy**

63.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea.  CPAP therapy typically involves the use of a nasal

---

[1]     *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

64.     Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

**II.     Bi-Level Positive Airway Pressure Therapy**

65.     Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea.  Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels - inspiratory and expiratory - of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device.  The inspiratory positive airway pressure assists a person as a breath is taken in.  Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver

one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

### III.    Mechanical Ventilation

66.    Mechanical ventilation treatment helps people breathe when they find it difficult or are unable to breathe on their own. Mechanical ventilators push airflow into patients' airway and lungs to help them breathe. Mechanical ventilation can be invasive or non-invasive. Invasive mechanical ventilation involves inserting a tube into a patient's airway and is usually performed in the intensive care unit in the hospital or a long-term care setting. Non-invasive mechanical ventilation can be used at home.

## SUBSTANTIVE ALLEGATIONS

67.    Philips developed, marketed, and sold a lineup of CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars.  Philips has sold millions of these devices in the United States.

### IV.    Philips Sleep & Respiratory Care Devices Were Endangering its Users

68.    On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors

including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

69.    Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philips announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

70.    The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
| --- | --- |
| **Device Name/Model** | **Type** |

---

[2]    *First Quarter Results*, PHILIPS (Apr. 26 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 16, 2021).

[3]    *Philips issues recall notification to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

[4]    *Id.*

[5]    Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

[6]    *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
|---|---|
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

| **Philips Mechanical Respirator Devices Subject to Recall[7]** ||
|---|---|
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

71.    According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled

Device users at risk of suffering from the following:  "Irritation (skin, eye, and respiratory tract),

inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver)

---

[7]    *Id.*

and toxic carcinogenic affects."[8]   Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

## V.   The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless

72.   As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

73.   The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions. Individuals not using life-supporting ventilators must discontinue their use of the Recalled Devices or face health risks as grave as cancer.  If they choose to discontinue use, they must pay for another expensive device in order to receive effective treatment. Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

74.   Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

---

[8]      *Id.*

[9]      *Id.*

[10]      *Id.* (emphasis in original).

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

75.     As a result of the above, Plaintiffs and the Class will have to undertake considerable expense replacing the Recalled Devices.

## VI.     <u>Philips Unreasonably Delayed its Recall</u>

76.     Philips has not disclosed when it first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[12]  However, given the fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it is unlikely that Defendants only recently learned of these issues.

77.     Several facts support the assertion that Philips knew of the issue of the degradation of PE-PUR foam in advance of issuing the recall. First, Philips' own language admits that the recall was issued in response to "several complaints" it had received regarding black particles and debris in the airways of the Recalled Devices. Second, posts on message boards and YouTube channels such as the website apneaboard.com and the YouTube channel CPAP Reviews complained about problems now known to be consistent with the degradation of PE-PUR foam, including black particles in the airways of the Recalled Devices.

78.     Thus, as a result of user reports, Philips was aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and sell the Recalled Devices with such awareness for a significant period of time. During this period,

---

[11]     *Id.* (emphasis in original).

[12]     *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS
https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

Philips unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of developing adverse health effects, including cancer.

79.     In fact, it was only after the early April 2021 release of the Philips Respironics DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that Philips publicly admitted the problems with the Recalled Devices in a regulatory filing. As detailed above, it was not for another seven weeks that Philips officially recalled the Recalled Devices.

**VII.    Philips' Recall Provides Inadequate Relief to Class Members**

80.     As part of its announcement of the recall on June 14, 2021, Philips announced that it would be implementing "a comprehensive repair and replacement program for the affected devices" as follows:

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.[13]

81.     As the above language makes clear, Philips did not intend to replace the Recalled Devices with Philips' newly manufactured DreamStation 2 devices that contain a different foam and are therefore not affected by the recall (although individuals could always purchase a new

---

[13]     *Id.*

Philips DreamStation 2 on their own), but instead intended to switch out the dangerous PE-PUR Foam in each Recalled Device. As events have already shown, this is a time-consuming process that has left, and will continue to leave Recalled Device users without use of their devices for untold periods of time.

82.     As implemented to date, the "repair and replacement" program has not repaired the vast majority of Recalled Devices. Recalled Device users seeking to have their devices repaired or replaced are asked to register their devices on the Philips website, but are provided only with a registration number and very vague information, if any information at all, as to when they can expect their Recalled Devices to be repaired.

83.     It was not until September 1, 2021, over 2 1/2 months after officially announcing the recall, that Philips announced it had begun to implement its repair and replacement program.[14] While some users have had replacement devices shipped to them, upon information and belief, very few machines have been repaired. Further, Philips has not provided guidance as to who will receive replacement devices or will have their devices repaired, only stating that some individuals will have their devices "rework[ed]" and that others will have their devices replaced.[15]

**VIII.   Plaintiff Dwayne Baldwin**

84.     Plaintiff Dwayne Baldwin is a citizen and resident of Illinois.

85.     Plaintiff Baldwin acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

---

[14]     *Philips starts repair and replacement program of first-generation DreamStation devices in the US in relation to earlier announced recall notification*, PHILIPS (Sept. 1, 2021), *available at* https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210901-philips-starts-repair-and-replacement-program-of-first-generation-dreamstation-devices-in-the-us-in-relation-to-earlier-announced-recall-notification.html.

[15]     *Id.*

86.     Plaintiff Baldwin regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

87.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Baldwin's Recalled Device is now worthless.

88.     Plaintiff Baldwin therefore seeks a refund of Plaintiff Baldwin's out of pocket expenses relating to the acquisition and use of Plaintiff Baldwin's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**IX.     Plaintiff James Cahalan**

89.     Plaintiff James Cahalan is a is a citizen and resident of Texas.

90.     Plaintiff Cahalan acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

91.     Plaintiff Cahalan regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

92.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Cahalan's Recalled Device is now worthless.

93.     Plaintiff Cahalan therefore seeks a refund of Plaintiff Cahalan's out of pocket expenses relating to the acquisition and use of Plaintiff Cahalan's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**X.     Plaintiff Bruce Ginsburg**

94.     Plaintiff Bruce Ginsburg is a citizen and resident of New York.

95.     Plaintiff Ginsburg acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

96.     Plaintiff Ginsburg regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

97.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Ginsburg's Recalled Device is now worthless.

98.     Plaintiff Ginsburg therefore seeks a refund of Plaintiff Ginsburg's out of pocket expenses relating to the acquisition and use of Plaintiff Ginsburg's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XI.     Plaintiff Lary Rosenblatt

99.     Plaintiff Lary Rosenblatt is a citizen and resident of Connecticut.

100.     Plaintiff Rosenblatt acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

101.     Plaintiff Rosenblatt regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

102.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Rosenblatt's Recalled Device is now worthless.

103.     Plaintiff Rosenblatt therefore seeks a refund of Plaintiff Rosenblatt's out of pocket expenses relating to the acquisition and use of Plaintiff Rosenblatt's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XII.     Plaintiff Ophile Northington

104.    Plaintiff Ophile Northington is a citizen and resident of Virginia.

105.    Plaintiff Northington acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

106.    Plaintiff Northington regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

107.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Northington's Recalled Device is now worthless.

108.    Plaintiff Northington therefore seeks a refund of Plaintiff Northington's out of pocket expenses relating to the acquisition and use of Plaintiff Northington's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**XIII.    <u>Plaintiff Joseph Foglio</u>**

109.    Plaintiff Joseph Foglio is a citizen and resident of California.

110.    Plaintiff Foglio acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

111.    Plaintiff Foglio regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

112.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Foglio's Recalled Device is now worthless.

113.    Plaintiff Foglio therefore seeks a refund of Plaintiff Foglio's out of pocket expenses relating to the acquisition and use of Plaintiff Foglio's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XIV.    Plaintiff Richard Odess

114.    Plaintiff Richard Odess is a citizen and resident of New Hampshire.

115.    Plaintiff Odess acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

116.    Plaintiff Odess regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

117.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Odess' Recalled Device is now worthless.

118.    Plaintiff Odess therefore seeks a refund of Plaintiff Odess' out of pocket expenses relating to the acquisition and use of Plaintiff Odess' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XV.    Plaintiff Scott LeBleau

119.    Plaintiff Scott LeBleau is a citizen and resident of Louisiana.

120.    Plaintiff LeBleau acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

121.    Plaintiff LeBleau regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

122.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff LeBleau's Recalled Device is now worthless.

123.    Plaintiff LeBleau therefore seeks a refund of Plaintiff LeBleau's out of pocket expenses relating to the acquisition and use of Plaintiff LeBleau's Recalled Device, a non-

defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XVI.  Plaintiff Chris White

124.    Plaintiff Chris White is a citizen and resident of Alabama.

125.    Plaintiff White acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

126.    Plaintiff White regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

127.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff White's Recalled Device is now worthless.

128.    Plaintiff White therefore seeks a refund of Plaintiff White's out of pocket expenses relating to the acquisition and use of Plaintiff White's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XVII.  Plaintiff Jodi Wolfe

129.    Plaintiff Jodi Wolfe is a citizen and resident of Wyoming.

130.    Plaintiff Wolfe acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

131.    Plaintiff Wolfe regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

132.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Wolfe's Recalled Device is now worthless.

133.    Plaintiff Wolfe therefore seeks a refund of Plaintiff Wolfe's out of pocket expenses relating to the acquisition and use of Plaintiff Wolfe's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XVIII.   Plaintiff Jill Leavenworth

134.    Plaintiff Jill Leavenworth is a citizen and resident of Connecticut.

135.    Plaintiff Leavenworth acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

136.    Plaintiff Leavenworth regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

137.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Leavenworth's Recalled Device is now worthless.

138.    Plaintiff Leavenworth therefore seeks a refund of Plaintiff Leavenworth's out of pocket expenses relating to the acquisition and use of Plaintiff Leavenworth's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XIX.   Plaintiff Edgardo Montalvo

139.    Plaintiff Edgardo Montalvo is a citizen and resident of Illinois.

140.    Plaintiff Montalvo acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

141.    Plaintiff Montalvo regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

142.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Montalvo's Recalled Device is now worthless.

143.    Plaintiff Montalvo therefore seeks a refund of Plaintiff Montalvo's out of pocket expenses relating to the acquisition and use of Plaintiff Montalvo's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XX.    Plaintiff Christopher Harford

144.    Plaintiff Christopher Harford is a citizen and resident of New Jersey.

145.    Plaintiff Harford acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

146.    Plaintiff Harford regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

147.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Harford's Recalled Device is now worthless.

148.    Plaintiff Harford therefore seeks a refund of Plaintiff Harford's out of pocket expenses relating to the acquisition and use of Plaintiff Harford's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXI.    Plaintiff David Phillips

149.    Plaintiff David Phillips is a citizen and resident of Texas.

150.    Plaintiff Phillips acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

151.    Plaintiff Phillips regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

152.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Phillips's Recalled Device is now worthless.

153.    Plaintiff Phillips therefore seeks a refund of Plaintiff Phillips's out of pocket expenses relating to the acquisition and use of Plaintiff Phillips's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXII.   Plaintiff Maureen Adams

154.    Plaintiff Maureen Adams is a citizen and resident of Connecticut.

155.    Plaintiff Adams acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

156.    Plaintiff Adams regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

157.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Adams' Recalled Device is now worthless.

158.    Plaintiff Adams therefore seeks a refund of Plaintiff Adams' out of pocket expenses relating to the acquisition and use of Plaintiff Adams' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXIII. Plaintiff Patrick Haggerty

159.    Plaintiff Patrick Haggerty is a citizen and resident of Minnesota.

23

160.    Plaintiff Haggerty acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

161.    Plaintiff Haggerty regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

162.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Haggerty's Recalled Device is now worthless.

163.    Plaintiff Haggerty therefore seeks a refund of Plaintiff Haggerty's out of pocket expenses relating to the acquisition and use of Plaintiff Haggerty's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXIV. **Plaintiff Penny Hudson**

164.    Plaintiff Penny Hudson is a citizen and resident of Virginia.

165.    Plaintiff Hudson acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

166.    Plaintiff Hudson regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

167.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hudson's Recalled Device is now worthless.

168.    Plaintiff Hudson therefore seeks a refund of Plaintiff Hudson's out of pocket expenses relating to the acquisition and use of Plaintiff Hudson's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXV.  **Plaintiff Alex Pagnotta**

169.    Plaintiff Alex Pagnotta is a citizen and resident of Maryland.

170.    Plaintiff Pagnotta acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

171.    Plaintiff Pagnotta regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

172.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Pagnotta's Recalled Device is now worthless.

173.    Plaintiff Pagnotta therefore seeks a refund of Plaintiff Pagnotta's out of pocket expenses relating to the acquisition and use of Plaintiff Pagnotta's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXVI. **Plaintiff Sauveuer Charles Valesco**

174.    Plaintiff Sauveuer Charles Valesco is a citizen and resident of Washington.

175.    Plaintiff Valesco acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

176.    Plaintiff Valesco regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

177.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Valesco's Recalled Device is now worthless.

178.    Plaintiff Valesco therefore seeks a refund of Plaintiff Valesco's out of pocket expenses relating to the acquisition and use of Plaintiff Valesco's Recalled Device, a non-

defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXVII.    **Plaintiff Barbara Traugh**

179.    Plaintiff Barbara Traugh is a citizen and resident of Pennsylvania.

180.    Plaintiff Barbara Traugh acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

181.    Plaintiff Barbara Traugh regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

182.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Barbara Traugh's Recalled Device is now worthless.

183.    Plaintiff Barbara Traugh therefore seeks a refund of Plaintiff Barbara Traugh's out of pocket expenses relating to the acquisition and use of Plaintiff Barbara Traugh's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXVIII.    **Plaintiff Randall Traugh**

184.    Plaintiff Randall Traugh is a citizen and resident of Pennsylvania.

185.    Plaintiff Randall Traugh acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

186.    Plaintiff Randall Traugh regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

187.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Randall Traugh's Recalled Device is now worthless.

188.    Plaintiff Randall Traugh therefore seeks a refund of Plaintiff Randall Traugh's out of pocket expenses relating to the acquisition and use of Plaintiff Randall Traugh's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXIX. Plaintiff Rita Conte

189.    Plaintiff Rita Conte is a citizen and resident of Connecticut.

190.    Plaintiff Conte acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

191.    Plaintiff Conte regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

192.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Conte's Recalled Device is now worthless.

193.    Plaintiff Conte therefore seeks a refund of Plaintiff Conte's out of pocket expenses relating to the acquisition and use of Plaintiff Conte's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXX. Plaintiff Danial Ting

194.    Plaintiff Danial Ting is a citizen and resident of Texas.

195.    Plaintiff Ting acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

196.    Plaintiff Ting regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

197.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Ting's Recalled Device is now worthless.

198.    Plaintiff Ting therefore seeks a refund of Plaintiff Ting's out of pocket expenses relating to the acquisition and use of Plaintiff Ting's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXXI. Plaintiff Lance Coumerilh

199.    Plaintiff Lance Coumerilh is a citizen and resident of Idaho.

200.    Plaintiff Coumerilh acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

201.    Plaintiff Coumerilh regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

202.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Coumerilh's Recalled Device is now worthless.

203.    Plaintiff Coumerilh therefore seeks a refund of Plaintiff Coumerilh's out of pocket expenses relating to the acquisition and use of Plaintiff Coumerilh's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXXII. Plaintiff Mark Yafchak

204.    Plaintiff Mark Yafchak is a citizen and resident of New York.

205.    Plaintiff Yafchak acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

206.    Plaintiff Yafchak regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

207.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Yafchak's Recalled Device is now worthless.

208.    Plaintiff Yafchak therefore seeks a refund of Plaintiff Yafchak's out of pocket expenses relating to the acquisition and use of Plaintiff Yafchak's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXIII.  **Plaintiff Glenn Goulding**

209.    Plaintiff Glenn Goulding is a citizen and resident of Florida.

210.    Plaintiff Goulding acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

211.    Plaintiff Goulding regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

212.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Goulding's Recalled Device is now worthless.

213.    Plaintiff Goulding therefore seeks a refund of Plaintiff Goulding's out of pocket expenses relating to the acquisition and use of Plaintiff Goulding's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXIV.  **Plaintiff Richard Radack**

214.    Plaintiff Richard Radack is a citizen and resident of North Carolina

215.    Plaintiff Radack acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

216.    Plaintiff Radack regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

217.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Radack's Recalled Device is now worthless.

218.    Plaintiff Radack therefore seeks a refund of Plaintiff Radack's out of pocket expenses relating to the acquisition and use of Plaintiff Radack's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXV.    **Plaintiff Roger Crooks**

219.    Plaintiff Roger Crooks is a citizen and resident of South Dakota.

220.    Plaintiff Crooks acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

221.    Plaintiff Crooks regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

222.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Crooks' Recalled Device is now worthless.

223.    Plaintiff Crooks therefore seeks a refund of Plaintiff Crooks' out of pocket expenses relating to the acquisition and use of Plaintiff Crooks' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXVI.  **Plaintiff Gary Jones**

224.    Plaintiff Gary Jones is a citizen and resident of Connecticut.

225.    Plaintiff Jones acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

226.    Plaintiff Jones regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

227.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Jones' Recalled Device is now worthless.

228.    Plaintiff Jones therefore seeks a refund of Plaintiff Jones' out of pocket expenses relating to the acquisition and use of Plaintiff Jones' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXVII.  **Plaintiff Jorge Serrano Magris**

229.    Plaintiff Jorge Serrano Magris is a citizen and resident of Puerto Rico.

230.    Plaintiff Magris acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

231.    Plaintiff Magris regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

232.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Magris' Recalled Device is now worthless.

233.    Plaintiff Magris therefore seeks a refund of Plaintiff Magris' out of pocket expenses relating to the acquisition and use of Plaintiff Magris' Recalled Device, a non-defective

replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXVIII. <u>Plaintiff Edith McRee Bowles</u>

234.    Plaintiff Edith McRee Bowles is a citizen and resident of Virginia.

235.    Plaintiff Bowles acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

236.    Plaintiff Bowles regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

237.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bowles' Recalled Device is now worthless.

238.    Plaintiff Bowles therefore seeks a refund of Plaintiff Bowles' out of pocket expenses relating to the acquisition and use of Plaintiff Bowles' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXXIX. <u>Plaintiff Cleo Holz</u>

239.    Plaintiff Cleo Holz is a citizen and resident of Wisconsin.

240.    Plaintiff Holz acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

241.    Plaintiff Holz regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

242.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Holz's Recalled Device is now worthless.

243.    Plaintiff Holz therefore seeks a refund of Plaintiff Holz's out of pocket expenses relating to the acquisition and use of Plaintiff Holz's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XL.    Plaintiff Joseph R. Kay III

244.    Plaintiff Joseph R. Kay III is a citizen and resident of New York.

245.    Plaintiff Kay acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

246.    Plaintiff Kay regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

247.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Kay's Recalled Device is now worthless.

248.    Plaintiff Kay therefore seeks a refund of Plaintiff Kay's out of pocket expenses relating to the acquisition and use of Plaintiff Kay's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XLI.    Plaintiff Catherine Quinn-Kay

249.    Plaintiff Catherine Quinn-Kay is a citizen and resident New York.

250.    Plaintiff Quinn-Kay acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

251.    Plaintiff Quinn-Kay regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

252.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Quinn-Kay's Recalled Device is now worthless.

253.    Plaintiff Quinn-Kay therefore seeks a refund of Plaintiff Quinn-Kay's out of pocket expenses relating to the acquisition and use of Plaintiff Quinn-Kay's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XLII.    Plaintiff Aimee Frenzel-Drew

254.    Plaintiff Aimee Frenzel-Drew is a citizen and resident of North Dakota.

255.    Plaintiff Frenzel-Drew acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

256.    Plaintiff Frenzel-Drew regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

257.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Frenzel-Drew's Recalled Device is now worthless.

258.    Plaintiff Frenzel-Drew therefore seeks a refund of Plaintiff Frenzel-Drew's out of pocket expenses relating to the acquisition and use of Plaintiff Frenzel-Drew's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XLIII.    Plaintiff Mark Weiner

259.    Plaintiff Mark Weiner is a citizen and resident of Rhode Island.

260.    Plaintiff Weiner acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

261.    Plaintiff Weiner regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

262.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Weiner's Recalled Device is now worthless.

263.    Plaintiff Weiner therefore seeks a refund of Plaintiff Weiner's out of pocket expenses relating to the acquisition and use of Plaintiff Weiner's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XLIV.  Plaintiff Bengy Schmidt

264.    Plaintiff Bengy Schmidt is a citizen and resident of Montana.

265.    Plaintiff Schmidt acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

266.    Plaintiff Schmidt regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

267.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Schmidt's Recalled Device is now worthless.

268.    Plaintiff Schmidt therefore seeks a refund of Plaintiff Schmidt's out of pocket expenses relating to the acquisition and use of Plaintiff Schmidt's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XLV.  Plaintiff Dan Africk

269.    Plaintiff Dan Africk is a citizen and resident of Massachusetts.

270.    Plaintiff Africk acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

271.    Plaintiff Africk regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

272.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Africk's Recalled Device is now worthless.

273.    Plaintiff Africk therefore seeks a refund of Plaintiff Africk's out of pocket expenses relating to the acquisition and use of Plaintiff Africk's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XLVI.   **Plaintiff Donna Cordova**

274.    Plaintiff Donna Cordova is a citizen and resident of Connecticut.

275.    Plaintiff Cordova acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

276.    Plaintiff Cordova regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

277.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Cordova's Recalled Device is now worthless.

278.    Plaintiff Cordova therefore seeks a refund of Plaintiff Cordova's out of pocket expenses relating to the acquisition and use of Plaintiff Cordova's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

XLVII.    **Plaintiff Allen Craig**

279.    Plaintiff Allen Craig is a citizen and resident of Mississippi.

280.    Plaintiff Craig acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

281.    Plaintiff Craig regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

282.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Craig's Recalled Device is now worthless.

283.    Plaintiff Craig therefore seeks a refund of Plaintiff Craig's out of pocket expenses relating to the acquisition and use of Plaintiff Craig's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

XLVIII.    **Plaintiff Shelley Davis**

284.    Plaintiff Shelley Davis is a citizen and resident of Connecticut.

285.    Plaintiff Davis acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

286.    Plaintiff Davis regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

287.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Davis' Recalled Device is now worthless.

288.    Plaintiff Davis therefore seeks a refund of Plaintiff Davis' out of pocket expenses relating to the acquisition and use of Plaintiff Davis' Recalled Device, a non-defective

replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**XLIX. Plaintiff Natalie Gottlieb on behalf of O.G.**

289.    Plaintiff Natalie Gottlieb is a citizen and resident of Connecticut.

290.    Plaintiff Gottlieb acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

291.    Plaintiff Gottlieb's child, O.G., regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

292.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Gottlieb's Recalled Device is now worthless.

293.    Plaintiff Gottlieb therefore seeks a refund of Plaintiff Gottlieb's out of pocket expenses relating to the acquisition and use of Plaintiff Gottlieb's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring of O.G., and all other appropriate damages.

**L.    Plaintiff Dorse Dale Green**

294.    Plaintiff Dorse Dale Green is a citizen and resident of Oklahoma.

295.    Plaintiff Green acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

296.    Plaintiff Green regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

297.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Green's Recalled Device is now worthless.

298.    Plaintiff Green therefore seeks a refund of Plaintiff Green's out of pocket expenses relating to the acquisition and use of Plaintiff Green's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**LI.    Plaintiff Annilaurie Cammack**

299.    Plaintiff Annilaurie Cammack is a citizen and resident of Alabama.

300.    Plaintiff A. Cammack acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

301.    Plaintiff A. Cammack regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

302.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff A. Cammack's Recalled Device is now worthless.

303.    Plaintiff A. Cammack therefore seeks a refund of Plaintiff A. Cammack's out of pocket expenses relating to the acquisition and use of Plaintiff A. Cammack's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**LII.    Plaintiff John Cammack**

304.    Plaintiff John Cammack is a citizen and resident of Alabama.

305.    Plaintiff J. Cammack acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

306.    Plaintiff J. Cammack regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

307.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff J. Cammack's Recalled Device is now worthless.

308.     Plaintiff J. Cammack therefore seeks a refund of Plaintiff J. Cammack's out of pocket expenses relating to the acquisition and use of Plaintiff J. Cammack's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## LIII.    Plaintiff John Tennery

309.     Plaintiff John Tennery is a citizen and resident of Alabama.

310.     Plaintiff Tennery acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

311.     Plaintiff Tennery regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

312.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Tennery's Recalled Device is now worthless.

313.     Plaintiff Tennery therefore seeks a refund of Plaintiff Tennery's out of pocket expenses relating to the acquisition and use of Plaintiff Tennery's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## LIV.    Plaintiff Richard Grisham

314.     Plaintiff Richard Grisham is a citizen and resident of Alabama.

315.     Plaintiff Grisham acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

316.    Plaintiff Grisham regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

317.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Grisham's Recalled Device is now worthless.

318.    Plaintiff Grisham therefore seeks a refund of Plaintiff Grisham's out of pocket expenses relating to the acquisition and use of Plaintiff Grisham's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### LV.    **Plaintiff Ruben Hammer**

319.    Plaintiff Ruben Hammer is a citizen and resident of Florida.

320.    Plaintiff Hammer acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

321.    Plaintiff Hammer regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

322.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hammer's Recalled Device is now worthless.

323.    Plaintiff Hammer therefore seeks a refund of Plaintiff Hammer's out of pocket expenses relating to the acquisition and use of Plaintiff Hammer's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### LVI.    **Plaintiff Bob Iwan**

324.    Plaintiff Bob Iwan is a citizen and resident of Pennsylvania.

325.    Plaintiff Iwan acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

326.    Plaintiff Iwan regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

327.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Iwan's Recalled Device is now worthless.

328.    Plaintiff Iwan therefore seeks a refund of Plaintiff Iwan's out of pocket expenses relating to the acquisition and use of Plaintiff Iwan's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### LVII.  **Plaintiff Kent McMillan**

329.    Plaintiff Kent McMillan is a citizen and resident of Arizona.

330.    Plaintiff McMillan acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

331.    Plaintiff McMillan regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

332.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff McMillan's Recalled Device is now worthless.

333.    Plaintiff McMillan therefore seeks a refund of Plaintiff McMillan's out of pocket expenses relating to the acquisition and use of Plaintiff McMillan's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

LVIII. **Plaintiff Michael Renken**

334.    Plaintiff Michael Renken is a citizen and resident of Nebraska.

335.    Plaintiff Renken acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

336.    Plaintiff Renken regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

337.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Renken's Recalled Device is now worthless.

338.    Plaintiff Renken therefore seeks a refund of Plaintiff Renken's out of pocket expenses relating to the acquisition and use of Plaintiff Renken's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## TOLLING AND ESTOPPEL

I.    DISCOVERY RULE TOLLING

339.    Plaintiffs, the Class, and Subclasses had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

340.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein.  Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

341.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

## II.    FRAUDULENT CONCEALMENT TOLLING

342.    By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

343.    Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses.  Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct.  For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

344.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

345.    Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Class").

346.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ALABAMA SUBCLASS**: all persons who were or are citizens of the State of Alabama who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Alabama Subclass").

347.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ARIZONA SUBCLASS**: all persons who were or are citizens of the State of Arizona who, from the beginning of any applicable limitations period through June 14, 2021,

purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Arizona Subclass").

348.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**CALIFORNIA SUBCLASS**: all persons who were or are citizens of the State of California who, from the beginning of any applicable limitations period through June 14, 2021, purchased one of the Recalled Devices for household or business use, and not for resale (the "California Subclass").

349.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**CONNECTICUT SUBCLASS:** all persons who were or are citizens of the State of Connecticut who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Connecticut Subclass").

350.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**FLORIDA SUBCLASS:** all persons who were or are citizens of the State of Florida who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Florida Subclass").

351.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**IDAHO SUBCLASS:** all persons who were or are citizens of the State of Idaho who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Idaho Subclass").

352.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ILLINOIS SUBCLASS:**  all persons who were or are citizens of the State of Illinois who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Illinois Subclass").

353.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**LOUISIANA SUBCLASS:**  all persons who were or are citizens of the State of Louisiana who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Louisiana Subclass").

354.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MARYLAND SUBCLASS:** all persons who were or are citizens of the State of Maryland who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Maryland Subclass").

355.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MASSACHUSETTS SUBCLASS:** all persons who were or are citizens of the State of Massachusetts who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Massachusetts Subclass").

356.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MINNESOTA SUBCLASS:** all persons who were or are citizens of the State of Minnesota who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Minnesota Subclass").

357.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MISSISSIPPI SUBCLASS:** all persons who were or are citizens of the State of Mississippi who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Mississippi Subclass").

358.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MONTANA SUBCLASS:** all persons who were or are citizens of the State of Montana who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Montana Subclass").

359.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEBRASKA SUBCLASS:** all persons who were or are citizens of the State of Nebraska who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Nebraska Subclass").

360.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW HAMPSHIRE SUBCLASS**: all persons who were or are citizens of the State of New Hampshire who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New Hampshire Subclass").

361.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW JERSEY SUBCLASS**: all persons who were or are citizens of the State of New Jersey who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New Jersey Subclass").

362.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW YORK SUBCLASS**: all persons who were or are citizens of the State of New York who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New York Subclass").

363.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NORTH CAROLINA SUBCLASS**: all persons who were or are citizens of the State of North Carolina who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "North Carolina Subclass").

364.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NORTH DAKOTA SUBCLASS**: all persons who were or are citizens of the State of North Dakota who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "North Dakota Subclass").

365.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**OKLAHOMA SUBCLASS**: all persons who were or are citizens of State of Oklahoma who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Oklahoma Subclass").

366.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**PENNSYLVANIA SUBCLASS**: all persons who were or are citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Pennsylvania Subclass").

367.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**PUERTO RICO SUBCLASS**: all persons who were or are citizens of Puerto Rico who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Puerto Rico class").

368.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**SOUTH DAKOTA SUBCLASS:** all persons who were or are citizens of the State of South Dakota who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "South Dakota Subclass").

369.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**TEXAS SUBCLASS:** all persons who were or are citizens of the State of Texas who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Texas Subclass").

370.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**VIRGINIA SUBCLASS:** all persons who were or are citizens of the Commonwealth of Virginia who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Virginia Subclass").

371.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WASHINGTON SUBCLASS:** all persons who were or are citizens of the State of Washington who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Washington Subclass").

372.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WISCONSIN SUBCLASS:** all persons who were or are citizens of the State of Wisconsin who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Wisconsin Subclass").

373.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WYOMING SUBCLASS:** all persons who were or are citizens of the State of Wyoming who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Wyoming Subclass").

374.     Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

375.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs  and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

376.     **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

377.     **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Philips Recalled Devices.

378.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

-  whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

379.    **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class and Subclasses.

380.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

381.    **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying

adjudications of the questions of law and fact common to members of the Classes and

Subclasses, and would be dispositive of the interests of the other members not parties to the

individual adjudications or would substantially impair or impede their ability to protect their

interests. This proposed class action presents fewer management difficulties than individual

litigation, and provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single court. Class treatment will create economies of time,

effort, and expense and promote uniform decision-making.

382.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3)

because the above common questions of law or fact predominate over any questions affecting

individual members of the Class, and a class action is superior to other available methods for the

fair and efficient adjudication of this controversy.

383.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because

Defendants acted or refused to act on grounds generally applicable to the Classes and Subclasses,

so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and

Subclasses as a whole.  Plaintiffs reserve the right to revise the foregoing class allegations and

definitions based on facts learned and legal developments following additional investigation,

discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY
### On Behalf of the Nationwide Class or, alternatively, the Subclasses

384.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

385.    Philips marketed and sold the Recalled Devices into the stream of commerce with

the intent that the Recalled Devices would be purchased by Plaintiffs and the Class and Subclasses.

386.    Philips expressly warranted, advertised, and represented to Plaintiffs and the Class and Subclasses that the Recalled Devices were safe and appropriate for human use.

387.    Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class and Subclasses entered into upon purchasing the Recalled Devices.

388.    Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class and Subclasses.  Plaintiffs and the Class and Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

389.    Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

390.    Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips.  These associated health effects substantially impair the use, value, and safety of Recalled Devices.

391.    Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class and Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

392.     Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use. Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

393.     The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class and Subclasses. The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class and Subclasses at the time of purchase of the Recalled Devices.

394.     As manufacturers, marketers, advertisers, distributors, and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

395.     In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

396.     Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class and Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

397.     All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

398.     Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them

safe and healthy for use by Plaintiffs and members of the Class and Subclasses, but failed to do so until now.

399.    As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class and Subclasses have been damaged because they did not receive the products as specifically warranted by Philips.  Plaintiffs and members of the Class and Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

400.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### On Behalf of the Nationwide Class or, alternatively, the Subclasses

401.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

402.    Philips are merchants engaging in the sale of goods to Plaintiffs and the Class and Subclasses.

403.    There was a sale of goods from Philips to Plaintiffs and the Class and Subclasses.

404.    At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class and Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use.  Plaintiffs and the Class and Subclasses relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

405.    Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was accompanied by the risk of adverse health effects that do not conform to the packaging.

406.    Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging.

407.    Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

408.    Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

409.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

410.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

### THIRD CLAIM FOR RELIEF

**FRAUDULENT MISREPRESENTATION**
**On Behalf of the Nationwide Class or, alternatively, the Subclasses**

411.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

412.    Philips falsely represented to Plaintiffs and the Class and Subclasses that the Recalled Devices were safe for human use.

413.    Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class and Subclasses to purchase Recalled Devices.

414.    Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of causing adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.  Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class and Subclasses.

415.    Plaintiffs and the Class and Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment.  Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiffs' and the Class' and Subclasses' reliance on Philips' misrepresentations was justifiable.

416.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

417.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION
### On Behalf of Nationwide Class or, alternatively, the Subclasses

418.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

419.    Philips concealed from and failed to disclose to Plaintiffs and the Class and Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

420.    Philips was under a duty to disclose to Plaintiffs and the Class and Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class and Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

421.    The facts concealed or not disclosed by Philips to Plaintiffs and the Class and Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

422.    Plaintiffs and the Class and Subclasses justifiably relied on the Philips' omissions to their detriment.  The detriment is evident from the true quality, characteristics, and risk

associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

423.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

424.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

**NEGLIGENT MISREPRESENTATION**
**On Behalf of the Nationwide Class or, alternatively, the Subclasses**

425.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

426.    Philips had a duty to Plaintiffs and the Class and Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

427.    Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

428.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not

as warranted and represented by Philips.  Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects do not conform to the packaging and labeling; (2) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (3) the Recalled Devices were otherwise not as warranted and represented by Philips.

429.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known they contained PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

430.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### MAGNUSION-MOSS FEDERAL WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### On Behalf of the Nationwide Class or, alternatively the Subclasses

431.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

432.    The Magnuson-Moss Warranty Act creates a private right of action for any consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1).

433.    At all relevant times, Defendants were "supplier[s]" of the Recalled Devices within the meaning of 15 U.S.C. § 2301.

434.    At all relevant times, Defendants were "warrantor[s]" within the meaning of 15 U.S.C. § 2302(e).

435.    At all relevant times, the Recalled Devices constituted "consumer products" within the meaning of 15 U.S.C. § 2301.

436.    At all relevant times, Plaintiffs and members of the Class and Subclasses were "consumers" within the meaning of 15 U.S.C. § 2301.

437.    At all relevant times, Defendants were engaged in the sale of consumer products (the Recalled Devices), throughout the United States, including Massachusetts, for use by members of the general public, including Plaintiffs and the members of the Class and Subclasses with the intent that it be used as a breathing device by consumers.

438.    At all relevant times, Defendants manufactured the Recalled Devices and placed it in sealed packaging to be opened by the ultimate consumer and used by individuals to treat health conditions.

439.    In so doing, Defendants impliedly warranted that the Recalled Devices sold to Plaintiffs and the Class were fit for the ordinary purpose for which such goods are used, i.e., treating health conditions.

440.    When sold by Defendants, the package was expected to reach the ultimate consumer without substantial change in the condition in which it was sold, and it did, in fact, reach its ultimate consumer without substantial change.

441.    Plaintiffs used Defendants' Recalled Devices to treat a medical condition as intended by Defendants.

442.    The Recalled Devices sold by Defendants were not fit for human use at the time of sale due to the presence of toxic PE-PUR Foam.

443.    Defendants had actual knowledge of its breaches of warranty set forth above as they received numerous customer complaints relating to the PE-PUR Foam's degradation in the Recalled Devices.

444.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the Recalled Devices.

445.    As a result of Defendants' breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

446.    Plaintiffs have not provided Philips with pre-suit notice of the defects giving rise to these Plaintiffs' claims because, pursuant to 15 U.S.C. § 2310(e), Plaintiffs may provide notice on behalf of themselves, the Class, and Subclasses after class certification.

## SEVENTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
**On Behalf of the Nationwide Class or, alternatively, the Subclasses)**

447.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

448.    Plaintiffs and the Class and Subclasses conferred substantial benefits on Philips through their purchase and use of Recalled Devices.  Philips knowingly and willingly accepted and enjoyed these benefits.

449.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class and Subclasses were given with the expectation that the Recalled Devices would have the qualities, characteristics, and suitability for use represented and warranted by Philips.  As

such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

450.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class and Subclasses.

451.    Plaintiffs and the Class and Subclasses are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

452.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## EIGHTH CLAIM FOR RELIEF

**ALABAMA DECEPTIVE TRADE PRACTICES ACT—DECEPTION**
**Ala. Code §§ 8-19-1 *et seq*.**
**On behalf of Plaintiffs Chris White, Annilaurie Cammack, John Cammack, John Tennery, Richard Grisham, and the Alabama Subclass**

453.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

454.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendants' Recalled Devices detailed above for personal, family or household use.

455.    At all relevant times, Defendants were either natural persons or corporations, trusts, partnerships, incorporated or unincorporated associations or some other legal entity.

456.    The Recalled Devices are "goods" as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(3).

457.    At all relevant times, Defendants were engaged in Trade or Commerce as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(8).

458.    The Alabama Deceptive Trade Practices Act declares that (1) passing off goods or services as those of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services; (4) using deceptive representations or designations of geographic origin in connection with goods or services; (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have; (6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased; (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (8) disparaging the goods, services, or business of another by false or misleading representation of fact; (9) advertising goods or services with intent not to sell them as advertised; (10) advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity; (11) making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions; and (12) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; is unlawful.  *See* Ala. Code § 8-19-5.

459.    The Alabama Deceptive Trade Practices Act further states that any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) any actual

damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) up to three times any actual damages. *See* Ala. Code § 8-19-10.

460.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising and sale of the Recalled Devices detailed above, knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

461.    Defendants knew that their statements were false or that their conduct was deceptive because, on information and belief, they routinely received complaints regarding the degradation of the PE-PUR Foam used in the Recalled Devices.

462.    The facts that Defendants misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendants' Recalled Devices.

463.    Defendants' misrepresentations, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

464.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

465.    Because the characteristics of the Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the Recalled Devices, the value of

the Recalled Devices was less than the value the Recalled Devices would have had the Recalled Devices actually possessed the characteristics that were represented.

466.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased or leased Defendants' Recalled Devices or would have paid less for those products.

467.    Instead, as a result of Defendants' misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented which denied them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

468.    Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

## NINTH CLAIM FOR RELIEF

**ALABAMA DECEPTIVE TRADE PRACTICES ACT—UNCONSCIONABILITY**
**Ala. Code §§ 8-19-1 *et seq.***
**On behalf of Plaintiffs Chris White, Annilaurie Cammack, John Cammack, John Tennery, Richard Grisham, and the Alabama Subclass**

469.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

470.    Plaintiff Chris White brings this claim individually and on behalf of the members of the Alabama Subclass.

471.    This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

66

472.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendants' Recalled Devices detailed above for personal, family or household use.

473.    At all relevant times, Defendants were either a natural person or corporation, trust, partnership, incorporated or unincorporated association or some other legal entity.

474.    The Recalled Devices are "goods" as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(3).

475.    At all relevant times, Defendants were engaged in Trade or Commerce as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(8).

476.    The Alabama Deceptive Trade Practices Act declares that engaging in unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce is unlawful. *See* Ala. Code § 8-19-5.

477.    The Alabama Deceptive Trade Practices Act further that any person who commits an unlawful practice under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) Up to three times any actual damages. *See* Ala. Code § 8-19-10.

478.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising and sale of the Recalled Devices detailed above, knowingly engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

479.    Defendants knew that their statements were false or that their conduct was unconscionable because there was an absence of meaningful choice on Plaintiffs' part.

480.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

481.    Because the characteristics of Defendants' Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the Recalled Devices, the value of the Recalled Devices was less than the value the Recalled Devices would have had if the Recalled Devices had actually possessed the characteristics that were represented.

482.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased or leased Defendants' Recalled Devices or would have paid less for those products.

483.    Instead, as a result of Defendants' misrepresentations and/or omissions, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received, causing them out-of-pocket damages.

484.    Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

## TENTH CLAIM FOR RELIEF

### ARIZONA CONSUMER FRAUD ACT
### Ariz. Rev. Stat. Ann. § 44-1521
### On behalf of Plaintiff Kent McMillan and the Arizona Subclass

485.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

486.    Arizona's Consumer Fraud Act prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

487.    At all relevant times, members of the Arizona Subclass and Defendants were either natural people or the person's legal representative, a partnership or domestic or foreign corporation, a company, trust, business entity or association or an agent, employee, salesman, partner, officer, director, member, stockholder, associate or trustee.

488.    The Recalled Devices are "merchandise" as defined by the Arizona Consumer Fraud Act. *See* Ariz. Rev. Stat. Ann. § 44-1521(5).

489.    At all relevant times, the Plaintiffs' and the Arizona Subclass' purchases or leases of Defendants' Recalled Devices were "sale(s)" as defined by the Arizona Consumer Fraud Act. *See* Ariz. Rev. Stat. Ann § 44-1521(7).

490.    Defendants willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale and advertisement of "merchandise" in violation of Ariz. Rev. Stat. Ann. §44-1522(A) as described in the allegations above.

491.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Arizona Subclass.

492.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and are so oppressive that the Arizona Subclass has little alternative but to submit and causes consumers substantial injury.

493.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting individuals' from avoidable dangers and that the manufacturer of merchandise is responsible for ensuring that their merchandise or products are fit for human use.

494.    The Arizona Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

495.    Plaintiffs, members of the Class, and members of the Arizona Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

496.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, members of the Class, and members of the Arizona Subclass suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs, members of the Class, and members of the Arizona Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

497. As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described.

### ELEVENTH CLAIM FOR RELIEF

**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750 *et seq*.**
**On behalf of Plaintiff Joseph Foglio and the California Subclass**

498. Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

499. Plaintiffs intend to provide Defendants, via certified mail, return receipt requested, notice of the specific complaint and damages in accordance with Cal. Civ. Code § 1761. Subject to the response, if any, by Defendants within 30 days of the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the CLRA.

500. Plaintiffs and each proposed Class member are "consumer[s]" as that term is defined in Cal. Civ. Code § 1761(d).

501. The Recalled Devices are "goods," as that term is defined in Cal. Civ. Code § 1761(a).

502. Each Defendant is a "person" as that term is defined in Cal. Civ. Code § 1761(c).

503. Plaintiffs' and each proposed Class member's purchase of Defendants' products constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e).

504. Philips' conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

> (a) Cal. Civ. Code § 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR

Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

(b) Cal. Civ. Code § 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Recalled Devices were of a particular standard, quality, or grade, when they were of another;

(c) Cal. Civ. Code § 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Recalled Devices with intent not to sell them as advertised; and

(d) Cal. Civ. Code § 1770(a)(16), by representing that the Recalled Devices have been supplied in accordance with previous representations when they have not.

505.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed by the misleading marketing described herein in any manner in connection with the advertising and sale of the Recalled Devices.

506.    Plaintiffs and Members of the Class seek relief for the injuries they have suffered as a result of Philips' practices, as provided by the CLRA and applicable law.

## TWELFTH CLAIM FOR RELIEF

### CALIFORNIA'S FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500 *et seq.*
### On behalf of Plaintiff Joseph Foglio and the California Subclass

507.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

508.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

509.    As set forth herein, Philips' claims that the Recalled Devices were and are safe for use by individuals were false because the Recalled Devices in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices, and were likely to deceive the public.

510.    Philips' claims that the Recalled Devices were and are safe for use by individuals were and are untrue and misleading because they failed to mention the presence of an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

511.    Philips knew, or reasonably should have known, that all these claims were untrue or misleading.

512.    Prospective injunctive relief is necessary given Philips' refusal to offer details as to when they intend to repair the Recalled Devices.

513.    Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Recalled Devices and replacement devices.

### THIRTEENTH CLAIM FOR RELIEF

**CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.***
**On behalf of Plaintiff Joseph Foglio and the California Subclass**

514.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

515.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

516.    Defendants fraudulently represented that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

517.    As alleged herein, Philips unlawfully advertised the Recalled Devices using false or misleading claims, such that Philips' actions as alleged herein violate at least the following laws:

(a) The CLRA, Cal. Bus. & Prof. Code § 1750 *et seq.*; and

> (b) The False Advertising Law, California Business & Professions Code §§ 17500, *et seq*.

518.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

519.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

520.    Philips' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Recalled Devices is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

521.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order requiring Philips to immediately repair or replace the Recalled Devices and an order for the restitution of all monies from the sale of the Recalled Devices, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## FOURTEENTH CLAIM FOR RELIEF

**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**Conn. Gen. Stat. §§ 42-110a *et seq*.**
**On behalf of Plaintiffs Lary Rosenblatt, Jill Leavenworth, Maureen Adams, Rita Conte, Gary Jones, Donna Cordova, Shelley Davis, Natalie Gottlieb, and the Connecticut Subclass**

522.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

523.    Plaintiffs Lary Rosenblatt, Jill Leavenworth, Maureen Adams, Rita Conte, Gary Jones, Donna Cordova, Shelley Davis, Natalie Gottlieb and members of the Connecticut Subclass are residents of the State of Connecticut.

524.    Each Defendant is a "person" as defined by Conn. Gen. Stat. Ann. § 42-110(a)(3).

525.    Plaintiffs Lary Rosenblatt, Jill Leavenworth, Maureen Adams, Rita Conte, Gary Jones, Donna Cordova, Shelley Davis, Natalie Gottlieb and members of the Connecticut Subclass are actual or potential consumers of Recalled Devices.

526.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Connecticut as defined by Conn. Gen. Stat. § 42-110(a)(4), in that they engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

527.    The Connecticut Unfair Trade Practices Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b(a).

528.    For the reasons discussed herein, Philips violated CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 42-110a *et seq.* Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

529.    Philips repeatedly advertised on the labels for Recalled Devices, on its websites, and through national advertising campaigns, that Recalled Devices were and are safe for use by individuals. Philips failed to disclose the material information that Recalled Devices contained

an unsafe material, PE-PUR Foam, which could cause a Recalled Device to suffer adverse health effects from use of the Recalled Devices.

530.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs and Connecticut Subclass Members in the form of the loss or diminishment of value of Recalled Devices Plaintiff and Connecticut Subclass Members purchased, which allowed Philips to profit at the expense of Plaintiffs and Connecticut Subclass Members. The injuries to Plaintiffs and Connecticut Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

531.    Plaintiffs Lary Rosenblatt, Jill Leavenworth, Maureen Adams, Rita Conte, Gary Jones, Donna Cordova, Shelley Davis, Natalie Gottlieb and members of the Connecticut Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by C.G.S. § 42-110g and applicable law.

## FIFTEENTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. §§ 501.201 *et seq.*
### On Behalf of Plaintiffs Glenn Goulding, Ruben Hammer, and the Florida Subclass

532.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

533.    Plaintiff Goulding, Plaintiff Hammer, and the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the Recalled Devices sold by Philips are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

534.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and

unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

535.    For the reasons discussed herein, Philips violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

536.    At all times mentioned herein, Philips engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

537.    Philips repeatedly advertised, both on the labels for the Recalled Devices, on its websites, and through national advertising campaigns, among other items, that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

538.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the Recalled Devices contained an unsafe material that could cause adverse health effects. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff Goulding and the Florida Subclass suffered damages by purchasing the Recalled Devices because they would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

539.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff Goulding and the Florida Subclass in the form of the loss or diminishment of value of the Recalled Devices, which allowed Defendants to profit at the expense of Plaintiff Goulding, Plaintiff Hammer, and the Florida Subclass. The injuries to Plaintiff Goulding, Plaintiff Hammer, and the Florida Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

540.    Plaintiff Goulding, Plaintiff Hammer, and the Florida Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## SIXTEENTH CLAIM FOR RELIEF

### IDAHO CONSUMER PRODUCTION ACT
**Idaho Code Ann. §§ 48-601,** *et seq*.
**On Behalf of Plaintiff Lance Coumerilh and the Idaho Subclass**

541.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

542.    Plaintiff Coumerilh brings this Count individually and on behalf of the Idaho Subclass.

543.    Idaho's Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce," as well as "any unconscionable method, act or practice in the conduct of trade or commerce." *See* Idaho Code Ann. § 48-603.

544.    Specifically, the Idaho's CPA forbids: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have; (2) representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another; (3) advertising goods or services with intent not to sell them as advertised; (4) engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

545.    The CPA provides that any person who purchases or leases goods or services and suffers any ascertainable loss of money or property as a result of the use by another person of an unfair or deceptive practice bay bring an action to recover actual damages.

546.    At all relevant times, members of the Idaho Subclass and Defendants were either natural people, corporations, trusts, partnerships, incorporated or unincorporated associations, companies, trusts, business entities or any other legal entity.

547.    Defendants willfully engaged in unfair, deceptive, and unconscionable practices in the conduct of trade or commerce as described in the allegations above.

548.    As a result, Defendants' conduct violates several provisions of the Idaho CPA, including but not limited to:

> (a) Section 48-603(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxins; and
>
> (b) Section 48-603(7): Representing goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendants' Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxins.
>
> (c) Section 48-603(17): Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer—as above, Defendants' Recalled Devices carried with them the impression that they were safe,

legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxins.

(d) Section 48-603(18): Engaging in any unconscionable method, act or practice in the conduct of trade or commerce. Here, Defendants knew that the Recalled Devices contained PE-PUR Foam, knew PE-PUR Foam in the Recalled Devices was degrading, and knew or reasonably should have known that consumers would want to buy Recalled Devices free of toxic PE-PUR Foam, and knew or reasonable should have known that consumers would not buy Recalled Devices that contains toxic PE-PUR Foam. Nevertheless, Defendants continually marketed the Recalled Devices as safe for consumers to use and unconscionably withheld information from the public about PE-PUR Foam in the Recalled Devices. These actions violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

549.    Defendants' omissions in violation of the Idaho CPA were likely to mislead an ordinary consumer. Plaintiffs and the Idaho Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to consumers' health. Plaintiffs and the Idaho Subclass also reasonably understood Defendants' omissions to mean that the toxic Recalled Devices was not of substandard quality. If Defendants had disclosed that the Recalled Devices contained toxic PE-PUR Foam dangerous to consumers' health and were of substandard quality, Plaintiffs and the Idaho Subclass would have been aware that the Recalled Devices contained toxic PE-PUR Foam, and Plaintiffs and the Idaho Subclass would not have purchased Defendants' Recalled Devices.

550.    Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

551.    Plaintiffs, the Class, and the Idaho Subclass relied to their detriment on Defendants' omissions in purchasing Recalled Devices.

552.     Plaintiffs, the Class, and the Idaho Subclass were deceived by Defendants'

deceptive and unfair acts and practices in that had they known the truth they would not have

purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

553.     Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the

Idaho Subclass suffered monetary losses in that (1) the actual value of the merchandise they

received was less than the value of the merchandise as represented denying them of the benefit of

their bargain; and (2) Plaintiffs, the Class, and the Idaho Subclass paid more than the fair market

value of the merchandise they received causing them out-of-pocket damages.

554.     As a direct and proximate result of the foregoing acts and practices, Defendants

received, or will receive, income, profits, and other benefits which they would not have received

if they had not engaged in the violations described in this Complaint.

## SEVENTEENTH CLAIM FOR RELIEF

**ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS 505/1, et s*eq.***
**On behalf of Plaintiffs Dwayne Baldwin, Edgardo Montalvo, and the Illinois Subclass**

555.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

556.     Plaintiffs Dwayne Baldwin, Edgardo Montalvo, and Illinois Subclass Members

are "consumers," as defined by ILCS 505/1(e).

557.     Each Defendant is a "person" as defined by 815 ILCS 505/1(c).

558.     The Recalled Devices sold by Philips are "merchandise" as defined by 815 ILCS

505/1(b).

559.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ILCS")

prohibits "unfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

560.    At all times mentioned herein, Philips engaged in trade or commerce in Illinois as defined by ILCS 815 ILCS 505/1(f), in that they advertised, offered for sale, sold or distributed goods or services in Illinois and/or engaged in trade or commerce directly or indirectly affecting the people of Illinois.

561.    Philips repeatedly advertised, both on the labels for the Recalled Devices, on its websites, and through a national advertising campaigns, among other items, that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

562.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the Recalled Devices contained an unsafe material that could cause adverse health effects. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs Dwayne Baldwin, Edgardo Montalvo, and the Illinois Subclass suffered damages by purchasing the Recalled Devices because they would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

563.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs Dwayne Baldwin, Edgardo Montalvo, and the Illinois Subclass in the form of the loss

or diminishment of value of the Recalled Devices, which allowed Defendants to profit at the expense of Plaintiffs Baldwin, Montalvo and the Illinois Subclass. The injuries to Plaintiffs Baldwin and Montalvo and the Illinois Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

564.    Plaintiffs Baldwin and Montalvo and the Illinois Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 815 ILCS 505/1 *et seq.* and applicable law.

## EIGHTEENTH CLAIM FOR RELIEF

**LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**La. Rev. Stat. Ann. §§ 51:1401, *et seq.***
**On behalf Plaintiff Scott LeBleau and the Louisiana Subclass**

565.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

566.    Plaintiff Scott LeBleau brings this Claim individually and on behalf of the Louisiana Subclass.

567.    At all relevant times, members of the Louisiana Subclass and Defendants were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

568.    At all relevant times, Defendants were engaged in "trade" or "commerce" as defined by La. Rev. Stat. Ann. §§ 51:1402(10).

569.    Louisiana's Unfair Trade Practices and Consumer Protection Law prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. §§ 51:1405(A).

570.    Louisiana's Unfair Trade Practices and Consumer Protection Law further provides that any person who suffers any ascertainable loss of money as a result of the use or employment by another person of an unfair or deceptive method, act, or practice may bring an action to recover actual damages.

571.    Defendants negligently, willfully, purposefully and/or wantonly and recklessly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection its advertising, offering for sale, sale, or distribution of property, in violation of La. Rev. Stat. Ann. § 51:1405(A) as described in the allegations above.

572.    Defendants' misrepresentations and omissions in the sale of the Recalled devices detailed above is an act or practice in the conduct of trade or commerce.

573.    Defendants' misrepresentations and omissions in the sale of its Recalled Devices detailed above impacts the public interest.

574.    Plaintiff LeBleau, the Class, and the Louisiana Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased the Recalled Devices or would have paid less for those products.

575.    Instead, as a result of Defendants' misrepresentation, Plaintiff LeBleau, the Class, and the Louisiana Subclass suffered monetary losses in that (1) the actual value of the Recalled Devices received was less than the value of the Recalled Devices as represented denying them of the benefit of their bargain; and (2) Plaintiff LeBleau, the Class, and the Louisiana Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

576.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of Plaintiffs, the Class, and the Louisiana Subclass.

577.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Louisiana Subclass had little alternative but to submit and causes consumers substantial injury.

578.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of devices is responsible for ensuring that they are fit for human use.

579.    Plaintiff LeBleau, the Class, and the Louisiana Subclass have suffered economic injury as a direct and proximate result of the Defendants' conduct.

580.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

581.    The Louisiana Subclass seeks relief pursuant to La. Rev. Stat. Ann. § 51:1409, including, *inter alia*, treble damages, attorney's fees, and costs.

### NINETEENTH CLAIM FOR RELIEF

**MASSACHUSETTS CONSUMER PROTECTION ACT**
**Mass. Gen. Laws ch. 93, §§1, *et seq.***
**On Behalf of the Nationwide Class, or, alternative on behalf of Plaintiff Africk and the Massachusetts Subclass**

582.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

583.    Plaintiffs intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A §1, *et seq.* ("MCPL") against Defendants.

Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts. Plaintiffs intend to provide notice pursuant to M.G.L. ch. 93A §9(3) to Defendant Philips NA. This Count provides notice that this Complaint shall be amended to demand all appropriate relief once the statutory period for a response has passed, subject to any response by Defendant Philips NA.

584.    Each Defendant is a "person" as defined by M.G.L.A. 93A §1(a).

585.    Plaintiffs, the Class, and the Massachusetts Subclass are actual or potential consumers of Recalled Devices.

586.    Philips engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L. 93A §2(a), including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics and use of Recalled Devices, in violation of 93A §2(a);

(b)    Represented that Recalled Devices are safe for use, in violation of 93A §2(a);

(c)    Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A §2(a); and

(d)    Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Devices users were at risk of suffering adverse health effects, in violation of 93A §2(a).

587.    As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiffs, the Class, and the Massachusetts Subclass.

588.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs, the Class, and the Massachusetts Subclass suffered damages

by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

589.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, the Class, and the Massachusetts Subclass in the form of the loss or diminishment of value of Recalled Devices Plaintiffs, the Class, and the Massachusetts Subclass purchased, which allowed Philips to profit at the expense of Plaintiffs, the Class, and the Massachusetts Subclass. The injuries to Plaintiffs, the Class, and the Massachusetts Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

590.    Plaintiffs, the Class, and the Massachusetts Subclass seek relief under 93A §9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

<u>**TWENTIETH CLAIM FOR RELIEF**</u>

**MARYLAND CONSUMER PROTECTION ACT**
**Md. Code Ann. Com. Law §§13-101, *et seq.***
**On behalf of Plaintiff Alex Pagnotta and the Maryland Subclass**

591.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

592.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair, abusive or deceptive trade practice in the sale or lease of consumer goods or services.

593.    The Maryland CPA also provides that unfair, abusive, or deceptive trade practices include, among other things, any:  (1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) representation that: (i) consumer goods,

consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; or (ii) consumer goods, consumer, realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) failure to state a material fact if the failure deceives or tends to deceive; and (4) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with (i) the promotion or sale of any consumer goods, consumer realty, or consumer service.

594. The Maryland CPA further provides that any person may bring an action to recover for injury or loss sustained by him as the result of an unfair, abusive or deceptive practice.

595. At all relevant times, Plaintiffs, the Class, the Maryland Subclass, and each Defendants were either individuals, corporations, business trusts, statutory trusts, estates, trusts, partnerships, associations, two or more persons having a joint or common interest, or another legal or commercial entity.

596. Philips willfully engaged in unfair, abusive, and deceptive trade practices as described in the allegations above.

597. Philips' conduct violates several provisions of the Maryland CPA, including but not limited to:

> (a) Section 13-301(1): Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which have the capacity, tendency, or effect of deceiving or misleading consumers - here, Philips' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;

88

(b) Section 13-301(2)(b)(i): Representing that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not – Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;

(c) Section 13-301(2)(b)(ii): Representing that consumer good, consumer realty, or consumer services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another - Philips' Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;

(d) Section 13-301(3):  Failing to state a material fact if the failure deceives or tends to deceive - Defendants failed to state the material fact that the Recalled Devices contained PE-PUR Foam which was at risk of degradation and causing adverse health effects to Recalled Device users, which both tends to deceive and did deceive Plaintiffs and the Maryland Subclass; and

(e) Section 13-301(9)(I): Committing deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with the promotion or sale of any consumer goods - Philips deceived Plaintiffs and the Maryland Subclass by misrepresenting the Recalled Devices as safe devices by knowingly concealing, suppressing, and omitting from all marketing the material fact that the Recalled Devices contained unsafe PE-PUR Foam.

598.    Philips' omissions in violation of the Maryland CPA were likely to mislead an ordinary consumer.  Plaintiffs and the Maryland Subclass reasonably understood Philips' omissions to mean that the Recalled Devices did not pose dangers to Recalled Devices users due to the PE-PUR Foam in the Recalled Devices.  Plaintiffs and the Maryland Subclass also reasonably understood Philips' omissions to mean that the Recalled Devices were not of substandard quality.

599.    If Philips had disclosed that its Recalled Devices contained toxins at levels that are dangerous to users of the Recalled Devices and were of substandard quality, and the Maryland Subclass would have been aware that the Recalled Devices contained dangerous PE-PUR Foam and was of substandard quality, and Plaintiffs and the Maryland Subclass would not have purchased Philips' Recalled Devices.

600.    Plaintiffs and the Maryland Subclass were deceived by Philips' deceptive and unfair acts and practices in that had they known the truth they would not have purchased the Recalled Devices or would have paid less for the Recalled Devices.

601.    Instead, as a result of Philips' misrepresentation, Plaintiffs and the Maryland Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the Recalled Devices as represented denying them of the benefit of their bargain; and (2) Plaintiffs and the Maryland Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

602.    Plaintiffs and the Maryland Subclass relied to their detriment on Philips' omissions in purchasing the Recalled Devices.

603.    Therefore, Plaintiffs and the Maryland Subclass are entitled to damages and equitable relief under the Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§13-101, *et seq.*

### TWENTY-FIRST CLAIM FOR RELIEF

**MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT**
**Minn. Stat. Ann. § 325D13, *et seq.***
**On behalf of Plaintiff Patrick Haggerty and the Minnesota Subclass**

604.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

605.    Each Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices ACT (MUTPA).

606.    Philips violated the MUTPA by knowingly misrepresenting the true quality and safety of the Recalled Devices by falsely claiming that the Recalled Devices are safe for use by individuals.

607.    Philips knew or should have known that the Recalled Devices were not in fact safe for human use because they contained the unsafe PE-PUR Foam which Philips knew could cause Recalled Device users to suffer adverse health effects.

608.    Philips' pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Haggerty and the Minnesota Subclass with respect to the safety of the Recalled Devices' for use by individuals.

609.    Philips intended that Plaintiff Haggerty and the Minnesota Subclass would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the safety of the Recalled Devices.

610.    Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

611.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff Haggerty and any reasonable consumer would have considered them in deciding whether to purchase and use the Recalled Devices. Had Plaintiff Haggerty and the Minnesota Subclass known the Recalled Devices did not have the quality advertised by Philips, they would not have purchased or used the Recalled Devices.

612.    Plaintiff Haggerty and the members of the Minnesota Subclass would not have purchased or used the Recalled Devices at all had they known of the presence of the unsafe PE-PUR Foam and the risk of suffering adverse health effects resulting from the use of the Recalled Devices that do not conform to Philips' claims.

613.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff Haggerty and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

**TWENTY-SECOND CLAIM FOR RELIEF**

**MINNESOTA'S UNIFORM DECEPTIVE TRADE PRATICES ACT**
**Minn. Stat. § 325D.44, *et seq.***
**On behalf of Plaintiff Haggerty and the Minnesota Subclass**

614.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

615.    Each Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

616.    Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Recalled Devices by falsely claiming that the Recalled Devices were and are safe to use.

617.    Philips knew or should have known that the Recalled Devices were not safe to use because they contain the dangerous PE-PUR Foam which can cause adverse health effects which does not conform to the packaging claims.

618.    Philips' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Haggerty and

the Minnesota Subclass with respect to the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

619. Philips intended that Plaintiff Haggerty and the Minnesota Subclass would rely on Philips' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

620. Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

621. The facts concealed or not disclosed by Philips were material facts in that Plaintiff Haggerty and any reasonable consumer would have considered them in deciding whether to purchase the Recalled Devices. Had Plaintiff Haggerty known the Recalled Devices did not have the quality advertised by Philips, Plaintiff Haggerty would not have purchased the Recalled Devices.

622. Philips intended that Plaintiff Haggerty and the Minnesota Subclass would rely on the deception by purchasing the Recalled Devices, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

623. As a direct and proximate result of Philips' conduct, Plaintiff Haggerty and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid and are now worthless.

624. Plaintiff Haggerty and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of PE-PUR Foam its dangers that do not conform to the packaging.

625. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff Haggerty and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees,

costs, and any other just and proper relief available thereunder for Philips' violations of the MUDTPA.

## TWENTY-THIRD CLAIM FOR RELIEF

### MINNESOTA FALSE STATEMENT IN ADVERTISING ACT
Minn. Stat. § 325F.67, *et seq.*
On behalf of Plaintiff Haggerty and the Minnesota Subclass

626.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

627.     Plaintiff Haggerty purchased "goods," specifically one of the Recalled Devices discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

628.      Plaintiff Haggerty purchased one of the Recalled Devices through Philips' statements on the packaging that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Philips that were untrue, deceptive, and misleading.

629.     By engaging in the conduct herein, Philips violated and continues to violate Minn. Stat. § 325F.67.

630.     Philips' misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Recalled Devices are safe for human use.

631.     Philips knew or should have known that the Recalled Devices did not have the quality and safety described above because they contained PE-PUR Foam, a dangerous material which does not conform to the packaging claims.

632.     Philips' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Haggerty and

the Minnesota Subclass with respect to the Recalled Devices' safety, uses, benefits, standards, quality, grade, and suitability for human use.

633.    Philips' conduct and omissions described herein occurred repeatedly in Philips' trade or business and were capable of deceiving a substantial portion of the consuming public.

634.    The facts concealed or not disclosed by Philips were material facts in that Plaintiff Haggerty and any reasonable consumer would have considered them in deciding whether to purchase the Recalled Devices. Had Plaintiff Haggerty known the Recalled Devices did not have the quality advertised by Philips, Plaintiff Haggerty would not have purchased one of the Recalled Devices.

635.    Philips intended that Plaintiff Haggerty and the Minnesota Subclass would rely on the deception by purchasing the Recalled Devices, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

636.    Philips' unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

637.    As a direct and proximate result of Philips' conduct, Plaintiff Haggerty and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid and are now worthless.

638.    Plaintiff Haggerty and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of the non-conforming PE-PUR Foam and its attendant dangers.

639.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff Haggerty and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' violations of the FSAA.

## TWENTY-FOURTH CLAIM FOR RELIEF

**MINNESOTA PREVENTION OF CONSUMER FRAUD ACT**
**Minn. Stat. § 325F.69, *et seq.***
**On behalf of Plaintiff Haggerty and the Minnesota Subclass**

640.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

641.    Plaintiff Haggerty is a resident of the State of Minnesota.

642.    Philips is a "person" within the meaning of the Minnesota Prevention of

Consumer Fraud Act (MPCFA).

643.    Philips' representations with respect to the Recalled Devices were made in

connection with the sale of the Recalled Devices to Plaintiff Haggerty and the Minnesota

Subclass.

644.    Philips knowingly acted, used, and employed fraud, false pretenses, false

promises, misrepresentations, misleading statements, and deceptive practices in connection with

the sale of its Recalled Devices. Specifically, Philips falsely represented that its Recalled

Devices were safe for human use.

645.    Philips knew or should have known that the Recalled Devices did not have the

quality described above because they contained PE-PUR Foam, a dangerous material that does

not conform to the packaging claims. Philips intended for Plaintiff Haggerty and the Minnesota

Subclass to rely on and accept as true these representations in deciding whether to purchase the

Recalled Devices.

646.    Philips' unfair or deceptive acts or practices were likely to deceive reasonable

consumers about the Recalled Devices' safety, quality, fitness for use and, by extension, the true

value of the Recalled Devices. Plaintiff Haggerty and the Minnesota Subclass relied on, and were

in fact deceived by, Philips' representations and omissions respect to the Recalled Devices'

safety, quality, and fitness for use in deciding to purchase them over competitors' Recalled Devices.

647.    Philips unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent course of conduct.

648.    As a direct and proximate result of Philips' conduct, Plaintiff Haggerty and the Minnesota Subclass have suffered actual damages in that they purchased the Recalled Devices that were worth less than the price they paid.

649.    Plaintiff Haggerty and the members of the Minnesota Subclass would not have purchased the Recalled Devices at all had they known of the presence of these non-conforming PE-PUR Foam material.

650.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Haggerty and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' violations of the MPCFA.

<u>**TWENTY-FIFTH CLAIM FOR RELIEF**</u>

**MISSISSIPPI CONSUMER PROTECTION ACT**
**Miss. Code Ann. §§ 75-24-1, *et seq.***
**On Behalf of Plaintiff Allen Craig and the Mississippi Subclass**

651.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

652.    Plaintiff Craig brings this Count individually and on behalf of the Mississippi Subclass.

653.    At all relevant times, Plaintiffs, the Mississippi Subclass, and Defendants were "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

654.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits unfair or deceptive trade practices in or affecting commerce. *See* Miss. Code Ann. § 75-24-5.

655.    Defendants willfully engaged in unfair or deceptive trade practices in or affecting commerce as described in the allegations above.

656.    As a result, Defendants' conduct violates several provisions of the Mississippi CPA, including but not limited to:

(a) Section 75-24-5(2)(e): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks; and

(b) Section 75-24-5(2)(g): Representing goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks.

657.    Defendants' omissions in violation of the Mississippi CPA were likely to mislead an ordinary consumer. Plaintiffs and the Mississippi Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health. Plaintiffs and the Mississippi Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices was not of substandard quality. If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to their health and were of substandard quality, Plaintiffs and the Mississippi Subclass would have been aware that the Recalled Devices contained a material, PE-PUR, that could degrade and be toxic to their health and were of substandard quality, and Plaintiffs and the Mississippi Subclass would not have purchased Defendants' Recalled Devices.

658.    Plaintiffs and the Mississippi Subclass relied to their detriment on Defendants' omissions in purchasing Recalled Devices.

## TWENTY-SIXTH CLAIM FOR RELIEF

**MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**Mont. Code Ann. §§ 30-14-101, *et seq.***
**On Behalf of Plaintiff Schmidt and the Montana Subclass**

659.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

660.    Plaintiff Schmidt is a resident of Montana.

661.    At all relevant times, Plaintiffs, the Montana Subclass, and Defendants were "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

662.    The Montana Unfair Trade Practices and Consumer Protection Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. See Mont. Code Ann. § 30-14-103.

663.    Defendants willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

664.    Defendants' misrepresentations, omissions, and suppression of material information in the sale of the Recalled Devices are acts or practices in the conduct or trade or commerce.

665.    Plaintiffs and the Montana Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

## TWENTY-SEVENTH CLAIM FOR RELIEF

**Nebraska Consumer Protection Act**
**Neb. Rev. Stat. §§ 59-1601, *et seq.***
**On behalf of Plaintiff Michael Renken and the Nebraska Subclass**

666.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

667.    Plaintiff Michael Renken brings this Count individually and on behalf of the Nebraska Subclass.

668.    Nebraska's Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

669.    At all relevant times, members of the Nebraska Subclass and Defendants were "persons" within the meaning of the Consumer Protection Act. *See* Neb. Rev. Stat. § 59-1601(1).

670.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Neb. Rev. Stat. § 59-1602 as described in the allegations above.

671.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were acts or practices in the conduct of trade or commerce.

672.    Defendant's misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

673.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Nebraska Subclass.

674.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy and were oppressive that the Nebraska Subclass had little alternative but to submit which caused consumers substantial injury.

675.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are fit for human use.

676.     The Nebraska Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

677.     As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-EIGHTH CLAIM FOR RELIEF

**NEW HAMPSHIRE REGULATION OF BUSINESS PRACTICES
FOR CONSUMER PROTECTION ACT
N.H. Rev. Stat. Ann. §§ 358-A, *et seq.*
On Behalf of Richard Odess and the New Hampshire Subclass**

678.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

679.     Plaintiff Odess brings this Count individually and on behalf of the New Hampshire Subclass.

680.     New Hampshire's Regulation of Business Practices for Consumer Protection Act ("New Hampshire CPA") prohibits any "unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *See* N.H. Rev. Stat. Ann. § 358-A:2.

681.     Among other things, the New Hampshire CPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not

have; and (4) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not. *See* N.H. Rev. Stat. Ann. § 358-A:2.

682.    At all relevant times, Plaintiffs, the New Hampshire Subclass, and Defendants were "persons" within the meaning of the New Hampshire CPA. *See* N.H. Rev. Stat. Ann. § 358-A:1, I.

683.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.H. Rev. Stat. Ann. § 358-A:2 as described in the allegations above.

684.    As a result, Defendants' conduct violates several provisions of the New Hampshire CPA, including but not limited to:

(a) Section 358-A:2, V: Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks; and

(b) Section 358-A:2, VII: Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks.

685.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

686.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

687.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the New Hampshire Subclass.

688.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the New Hampshire Subclass had little alternative but to submit, which caused consumers substantial injury.

689.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

690.    The New Hampshire Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

691.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-NINTH CLAIM FOR RELIEF

### NEW JERSEY CONSUMER FRAUD ACT
**N.J. Stat. Ann. §§ 56:8-1, *et seq.***
**On behalf of Plaintiff Christopher Harford and the New Jersey Subclass**

692.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

693.    Plaintiff Christopher Harford brings this claim individually and on behalf of the New Jersey Subclass.

694.    New Jersey's Consumer Fraud Act ("New Jersey CFA") prohibits any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." *See* N.J. Stat. Ann. §56:8-2.

695.    At all relevant times, members of the New Jersey Subclass and Defendants were "persons" within the meaning of the New Jersey CFA. *See* N.J. Stat. Ann. § 56:8-1(d).

696.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of the merchandise as defined by N.J. Stat. Ann. § 56:8-1(c) in violation of N.J. Stat. Ann. § 56:8-2 as described in the allegations above.

697.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were acts or practices in the conduct of trade or commerce.

698.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

699.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of Plaintiffs, the Class, and the New Jersey Subclass.

700.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offended public policy, and were so oppressive that

Plaintiffs, the Class, and the New Jersey Subclass had little alternative but to submit, which caused consumers substantial injury.

701.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

702.    Plaintiffs, the Class, and the New Jersey Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

703.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

704.    As a result, Plaintiffs, the Class, and the New Jersey Subclass seek relief including, *inter alia*, refund of amounts recovered by Defendants for the Recalled Devices, injunctive relief, damages, treble damages, attorney's fees, and costs pursuant to N.J. Stat. Ann. §§ 56:8-2.11 and 56:8-19.

## **THIRTIETH CLAIM FOR RELIEF**

### **NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law § 349 *et seq.***
**On behalf of Plaintiffs Bruce Ginsburg, Mark Yafchak, Joseph R. Kay III, Catherine Quinn-Kay, and the New York Subclass**

705.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

706.    New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce ... "GBL § 349(a).

707.    The practices alleged herein - namely, Defendant's use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiffs

and the New York Subclass that the Recalled Devices contained the dangerous material PE-PUR Foam which does not conform to the products' labels, packaging, advertising, and statements - are unfair, deceptive, and misleading in violation of GBL § 349.

708.    Because the dangers presented by the presence of PE-PUR Foam pertain to the Recalled Devices' central functionality, *i.e.*, the safety of the devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Plaintiffs and the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions.

709.    Because Philips failed to disclose these material facts, consumers were misled.

710.    At all relevant times, Philips had exclusive knowledge that the PE-PUR Foam present in the Recalled Devices could cause users of the Recalled Devices to suffer adverse health effects which do not conform to the products' labels, packaging, advertising, and statements.

711.    Philips further knew or reasonably should have known that there was no disclosure on the Recalled Devices' packaging, or at the point of sale, that the products contained dangerous materials that were at risk of causing users of the Recalled Devices to suffer from adverse health effects.

712.    At all relevant times, Philips knew or reasonably should have known that Plaintiffs and the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

713.    The foregoing deceptive acts and practices were directed at Plaintiffs and the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the

aforementioned risk of suffering adverse health effects as a result of the presence of the

dangerous PE-PUR Foam.

714.    As a result of Philips' unlawful action, Plaintiffs and the New York Subclass seek

to enjoin Defendants' deceptive and unlawful acts and practices described herein to recover

actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable

attorneys' fees, and all other remedies this Court deems proper.

## THIRTY-FIRST CLAIM FOR RELIEF

**NEW YORK GENERAL BUSINESS LAW**
**N.Y. Gen. Bus. Law § 350** *et seq.*
**On behalf of Plaintiffs Bruce Ginsburg, Mark Yafchak, Joseph R. Kay III, Catherine**
**Quinn-Kay, and the New York Subclass**

715.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

716.    GBL § 350 defines false advertising as:

> "advertising, including labeling, of a commodity ... if such advertising is
> misleading in a material respect. In determining whether any advertising is
> misleading, there shall be taken into account ( among other things) not
> only representations made by statement, word, design, device, sound or
> any combination thereof, but also the extent to which the advertising fails
> to reveal facts material in the light of such representations with respect to
> the commodity . . . to which the advertising relates under the conditions
> prescribed in said advertisement, or under such conditions as are
> customary or usual."

717.    The practices alleged herein - namely, Defendant's use of deception, fraud, false

pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiffs

and the New York Subclass that the Recalled Devices contained that the Recalled Devices

contained the dangerous material PE-PUR Foam which does not conform to the products' labels,

packaging, advertising, and statements - fail to reveal material facts in respect to the Recalled

Devices, and therefore violate GBL § 350.

718.    Because these practices pertain to the Recalled Devices' central functionality, *i.e.*, the safety of the Recalled Devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Plaintiffs and the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions. Because Philips failed to disclose these material facts, consumers were misled.

719.    At all relevant times, Philips knew or reasonably should have known that Plaintiffs and the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips foregoing unfair practices.

720.    At all relevant times, Philips knew or reasonably should have known that Plaintiffs and the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

721.    The foregoing deceptive acts and practices were directed at Plaintiffs and the New York Subclass and have resulted in consumer injury or harm to the New York public.

722.    Plaintiffs and other members of the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

723.    As a result of Defendant's unlawful action, Plaintiffs and the New York Subclass seek to enjoin Philips' misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## THIRTY-SECOND CLAIM FOR RELIEF

**NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**N.C. Gen. Stat. §§ 75-1.1,** *et seq.*
**On Behalf of Plaintiff Richard Radack and the North Carolina Subclass**

724.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

725.    Plaintiff Richard Radack brings this Count individually and on behalf of the North Carolina Subclass.

726.    North Carolina Unfair Trade Practices Act prohibits any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

727.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to reasonably rely upon in connection with trade or commerce in violation of N.C. Gen. Stat. § 75-1.1(a) as described in the allegations above.

728.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy Recalled Devices.

729.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the North Carolina Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health. Plaintiffs and the North Carolina Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

730.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to their health and were of substandard quality, Plaintiffs and the North Carolina Subclass would have been aware that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to their health and were of substandard quality, and Plaintiffs and the North Carolina Subclass would not have purchased Defendants' Recalled Devices.

731.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

732.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

733.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the North Carolina Subclass.

734.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the North Carolina Subclass had little alternative but to submit, which caused consumers substantial injury.

735.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

736.    The North Carolina Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

737.    As a direct and proximate result of the foregoing acts and practices Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## THIRTY-THIRD CLAIM FOR RELIEF

### NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT
### N.D. Cent. Code §§ 51-15-01, *et seq.*
### On Behalf of Plaintiff Aimee Frenzel-Drew and the North Dakota Subclass

738.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

739.    Plaintiff Aimee Frenzel-Drew brings this Count individually and on behalf of the North Dakota Subclass.

740.    North Dakota's Unlawful Sales or Advertising Practices Act ("North Dakota USAPA") prohibits any "act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

741.    At all relevant times, members of the North Dakota Subclass and Defendants were "persons" within the meaning of the North Dakota USAPA. *See* N.D. Cent. Code § 51-15-01(4).

742.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of "merchandise"

(as defined by N.D. Cent. Code § 51-15-01(3)) in violation of N.D. Cent. Code § 51-15-02 as described in the allegations above.

743.    Defendants willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

744.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

745.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiff Frenzel-Drew and the North Dakota Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials that are dangerous to users' health. Plaintiff Frenzel-Drew and the North Dakota Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

746.    If Defendants had disclosed that the Recalled Devices contained toxic materials that were dangerous to users' health and were of substandard quality, Plaintiff Frenzel-Drew and the North Dakota Subclass would have been aware of those that the Recalled Devices contained toxic materials dangerous to users' health and were of substandard quality and Plaintiff Frenzel-Drew and the North Dakota Subclass would not have purchased Defendants' Recalled Devices.

747.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

748.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

749.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are unfair because they inequitably enriched Defendants at the expense of the North Dakota Subclass.

750.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the North Dakota Subclass had little alternative but to submit and causes consumers substantial injury.

751.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are fit for human use.

752.    The North Dakota Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

753.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## THIRTY-FOURTH CLAIM FOR RELIEF

**OKLAHOMA CONSUMER PROTECTION ACT**
**Okla. Stat. tit. 15, §§ 751, *et seq.***
**On behalf of Plaintiff Green and the Oklahoma Subclass**

754.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

755.    Plaintiff Green brings this claim individually and on behalf of the Oklahoma Subclass.

756.     At all relevant times, members of the Oklahoma Subclass and Defendants were "persons" within the meaning of the Oklahoma Consumer Protection Act ("Oklahoma CPA"). *See* Okla. Stat. tit. 15, § 752(1).

757.     Oklahoma's CPA" prohibits "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and any "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* Okla. Stat. tit. 15, § 752(14).

758.     Specifically, the Oklahoma CPA forbids: (1) making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction; (2) making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith; (3) representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and (4) committing an unfair or deceptive trade practice as defined in Okla. Stat. tit. 15, § 752.

759.     Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material reasonably expected to deceive or mislead consumers in violation of Okla. Stat. tit. 15, § 753(20) as described in the allegations above.

760.     As a result, Defendants' conduct violates several provisions of the Oklahoma CPA, including but not limited to:

(a) Section 15-753(2): Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam;

(b) Section 15-753(5): Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith—as above, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam; and

(c) Section 15-753(7): Making a false representation, knowingly or with reason to know, that the Recalled Devices were of a particular standard, style or model, when they were of another—here, Defendants' representations concerning the Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam;

(d) Section 15-753(8): Advertising, knowingly or with reason to know, the Recalled Devices with intent not to sell the Recalled Devices as advertised—here, Defendants' advertisements concerning the Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves the risk of exposure to dangerous toxic materials such as PE-PUR Foam;

761.    Defendants' misrepresentations, omissions, and advertisements in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy Recalled Devices.

762.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Oklahoma Subclass reasonably understood Defendants' misrepresentations, omissions, and advertisements to mean that the Recalled Devices did not

contain toxic materials such as PE-PUR Foam that are dangerous to consumers' health. Plaintiff and the Oklahoma Subclass also reasonably understood Defendants' misrepresentations, omissions, and advertisements to mean that the Recalled Devices were not of substandard quality.

763.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality, Plaintiffs and the Oklahoma Subclass would have been aware that the Recalled Devices contained excessive toxic materials such as PE-PUR Foam and were of substandard quality, and Plaintiffs and the Oklahoma Subclass would not have purchased Defendants' Recalled Devices.

764.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

765.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

766.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriching Defendants at the expense of the Oklahoma Subclass.

767.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offends public policy, and are so oppressive that the Oklahoma Subclass has little alternative but to submit and causes consumers substantial injury.

768.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policies of protecting

consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that their products are fit for human use.

769.    The Oklahoma Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

770.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

## THIRTY-FIFTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.*
### On behalf of the Nationwide Class, or alternatively, Plaintiffs Barbara Traugh, Randall Traugh, Bob Iwan, and the Pennsylvania Subclass

771.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

772.    At all times mentioned herein, Philips engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

773.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

774.    For the reasons discussed herein, Philips violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices

proscribed by UTCPL §§ 201-1 et seq. Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

775.    Philips repeatedly advertised on the labels and packing for the Recalled Devices, on Philips' websites, and through national advertising campaigns, among other items, that the Recalled Devices were safe and fit for human use. Philips failed to disclose the material information that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.

776.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs, members of the Class, and members of the Pennsylvania Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam which can cause a number of adverse health effects, including cancer.

777.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff, the Class, and the Pennsylvania Subclass in the form of the loss or diminishment of value of the Recalled Devices Plaintiffs, the Class, and the Pennsylvania Subclass purchased, which allowed Defendants to profit at the expense of Plaintiffs, the Class, and the Pennsylvania Subclass. The injuries Plaintiffs, the Class, and the Pennsylvania Subclass were to legally

protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

778.    Plaintiffs, the Class, and the Pennsylvania Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

## THIRTY-SIXTH CLAIM FOR RELIEF

### RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT
### R.I. Gen. Laws §§ 6-13.1, *et seq.*
### On Behalf of Plaintiff Mark Weiner and the Rhode Island Subclass

779.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

780.    Plaintiff Mark Weiner brings this Count individually and on behalf of the Rhode Island Subclass.

781.    At all relevant times, Plaintiff Weiner, the Rhode Island Subclass, and Defendants were "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

782.    The Rhode Island Deceptive Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. R.I. Gen. Laws § 6-13.1-2.

783.    The Rhode Island Deceptive Trade Practices Act further states that any person who commits one or more of the acts or practices declared unlawful under this chapter shall be liable to each consumer for actual damages sustained by such consumer or person, or the sum of $200, whichever is greater.  *See* R.I. Gen. Laws § 6-13.5.2 (2020).

784.    Defendants willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

785.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

786.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiff Weiner and the Rhode Island Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials that are dangerous to users' health. Plaintiff Weiner and the Rhode Island Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

787.    If Defendants had disclosed that the Recalled Devices contained toxic materials that were dangerous to users' health and were of substandard quality, Plaintiff Weiner and the Rhode Island Subclass would have been aware of those that the Recalled Devices contained toxic materials dangerous to users' health and were of substandard quality and Plaintiff Weiner and the Rhode Island Subclass would not have purchased Defendants' Recalled Devices.

788.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

789.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

790.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are unfair because they inequitably enriched Defendants at the expense of the Rhode Island Subclass.

791.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the Rhode Island Subclass had little alternative but to submit and causes consumers substantial injury.

792.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are fit for human use.

793.    The Rhode Island Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

794.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

795.    Plaintiffs and the Rhode Island Subclass suffered loss of money as a direct and proximate result of Defendants' unfair, deceptive practices.

<u>**THIRTY-SEVENTH CLAIM FOR RELIEF**</u>

**SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND
CONSUMER PROTECTION ACT
S.D. Codified Laws §§ 37-24-1, *et seq.*
On Behalf of Plaintiff Roger Crooks and the South Dakota Subclass**

796.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

797.    Plaintiff Roger Crooks brings this Count individually and on behalf of the South Dakota Subclass.

798.    It is a deceptive act or practice under South Dakota's Deceptive Trade Practices and Consumer Protection Act for any person to "knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or

omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." *See* S.D. Codified Laws § 37-24-6(1).

799.    At all relevant times, members of the South Dakota Subclass and Defendants were "persons" within the meaning of the Deceptive Trade Practices and Consumer Protection Act. *See* S.D. Codified Laws § 37-24-1(8).

800.    Defendants willfully and knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by S.D. Codified Laws § 37-24-1(7)) in violation of S.D. Codified Laws § 37-24-6(1) as described in the allegations above.

801.    Defendants willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

802.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

803.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiff Crooks and the South Dakota Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials that are dangerous to users' health. Plaintiff Crooks and the South Dakota Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

804.    If Defendants had disclosed that the Recalled Devices contained toxic materials that were dangerous to users' health and were of substandard quality, Plaintiff Crooks and the

South Dakota Subclass would have been aware of those that the Recalled Devices contained toxic materials dangerous to users' health and were of substandard quality and Plaintiff Crooks and the South Dakota Subclass would not have purchased Defendants' Recalled Devices.

805.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

806.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

807.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are unfair because they inequitably enriched Defendants at the expense of the South Dakota Subclass.

808.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the South Dakota Subclass had little alternative but to submit and causes consumers substantial injury.

809.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are fit for human use.

810.    The South Dakota Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

811.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

### THIRTY-EIGHTH CLAIM FOR RELIEF

**TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**
**Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.***
**On behalf of Plaintiffs James Cahalan, David Phillips, Danial Ting,**
**and the Texas Subclass**

812.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

813.    Plaintiffs James Cahalan, David Phillips, and Danial Ting bring this claim

individually and on behalf of the Texas Subclass.

814.    At all relevant times, Plaintiffs, Class members, Texas Subclass members, and

Defendants were "persons" within the meaning of the Texas Deceptive Trade Practices-

Consumer Protection Act ("Texas DTPCPA"). *See* Tex. Bus. & Com. Code Ann. § 17.45(3).

815.    Texas' DTPCPA prohibits any "[f]alse, misleading, or deceptive acts or practices

in the conduct of any trade or commerce" or any "act or practice which, to a consumer's

detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the

consumer to a grossly unfair degree."

816.    Among other things, the Texas DTPCPA prohibits: (1) causing likelihood of

confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods;

(2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or

associations with, or certification by, another; (3) representing such subject of a consumer

transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits

it does not have which the supplier knows or should reasonably know it does not have; and (4)

representing that such subject of a consumer transaction is of a particular standard, quality,

grade, style, or model, if it is not.

817.    Defendants willfully and purposefully engaged in deceptive, unconscionable, and

unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of

material facts they intended others to rely upon in connection with trade or commerce in violation of Tex. Bus. & Com. Code Ann. §§ 17.50(a)(1)(B) and (3) as described in the allegations above.

818.    As a result, Defendants' conduct violates several provisions of the Texas UDTPA, including but not limit d to:

(a) Section 17.46(b)(2): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendants' willful failure to disclose to consumers that the PE-PUR Foam in the Recalled Devices was dangerous to consumers' health while at the same time asserting that the Recalled Devices were beneficial to consumers' healthy causes the likelihood of confusion or misunderstanding in that it causes a likelihood that consumers will believe the Recalled Devices do not contain toxic materials such as PE-PUR Foam that are dangerous to consumers health. This provision does not require proof of actual confusion or misunderstanding;

(b) Section 17.46(b)(5): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions; and

(c) Section 17.46(b)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions.

819.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

820.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the Texas Subclass reasonably understood Defendants'

omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are consumers' health. Plaintiffs and the Texas Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

821.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality, Plaintiffs, the Class, and the Texas Subclass would have been aware that the that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality, and Plaintiffs and the Texas Subclass would not have purchased Defendants' Recalled Devices.

822.    Plaintiffs, members of the Class, and members of the Texas Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

823.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

824.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Texas Subclass.

825.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Texas Subclass has little alternative but to submit and causes consumers substantial injury.

826.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

827.    Plaintiffs, the Class, and the Texas Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

828.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

**THIRTY-NINTH CLAIM FOR RELIEF**

**VIRGINIA CONSUMER PROTECTION ACT**
**Va. Code Ann. § 59.1-196**
**On behalf of Plaintiffs Ophile Northington, Penny Hudson, Edith McRee Bowles,**
**and the Virginia Subclass**

829.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

830.    Each Defendant is a "[p]erson" within the meaning of Va. Code Ann. §59.1-198.

831.    Each Defendant is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

832.    The Recalled Devices are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

833.    Philips engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

834.    The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

835.    The Virginia CPA makes unlawful specific acts, including:

     (a)     "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

     (b)     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

     (c)     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

     (d)     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

836.    Philips violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose the quality of the Recalled Devices and the dangers the PE-PUR Foam posed to Recalled Device users.

837.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the safety, quality, characteristics, and benefits of the Recalled Devices, Philips engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA.

838.    Philips' omissions and misrepresentations described herein had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs, the Class, and the Virginia Subclass, into purchasing the Recalled Devices.

839.    The facts regarding the Recalled Devices that Philips knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs, the Class, and the Virginia Subclass, who consider such facts to be important to their purchase decisions with respect to the Recalled Devices.

840.    Plaintiffs, the Class, and the Virginia Subclass had no way of discerning that Philips' representations were false and misleading, or otherwise learning the facts that Philips had concealed or failed to disclose. Plaintiffs, the Class, and the Virginia Subclass did not, and could not, unravel Defendants' deception on their own.

841.    Philips had an ongoing duty to Plaintiffs, the Class, and the Virginia Subclass to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, Philips owed Plaintiffs, the Class, and the Virginia Subclass a duty to disclose all the material facts regarding the Recalled Devices.

842.    Plaintiffs, the Class, and the Virginia Subclass were aggrieved by Philips' violations of the Virginia CPA because they were damaged as a direct and proximate result of Philips' deceptive and unfair practices. Plaintiffs, the Class, and the Virginia Subclass relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Recalled Devices.

843.    Had Plaintiffs, the Class, and the Virginia Subclass known of the dangers posed by the PE-PUR Foam in the Recalled Devices, they would not have bought the Recalled Devices, or they would not have paid the premium price that they did and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

844.    As a result of Philips' violations of the Virginia CPA, as alleged herein, Plaintiffs, the Class, and the Virginia Subclass seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## FOURTIETH CLAIM FOR RELIEF

**WASHINGTON CONSUMER PROTECTION ACT**
**Wash. Rev. Code §§ 19.86.010, *et seq.***
**On behalf of Plaintiff Sauveuer Charles Valesco and the Washington Subclass**

845.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

846.     Plaintiff Sauveuer Charles Valesco brings this claim individually and on behalf of the Washington Subclass.

847.     Washington's Consumer Protection Act ("Washington CPA") prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

848.     At all relevant times, members of the Washington Subclass and Defendants were "persons" within the meaning of the Washington CPA. *See* Wash. Rev. Code § 19.86.010(1).

849.     Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Wash. Rev. Code § 19.86.020 as described in the allegations above.

850.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

851.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest in that Defendants' acts: (1) violated the specific legislative declaration of public interest impact described by Wash. Rev. Code § 19.86.920; (2) injured other persons as alleged above; (3) had the capacity to injure other persons; and (4) continues to have the capacity to injure other persons.

852.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Washington Subclass.

853.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the Washington Subclass has little alternative but to submit and cause consumers substantial injury.

854.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

855.    The Washington Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

## FORTY-FIRST CLAIM FOR RELIEF

**WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**Wis. Stat. §§ 100.18, *et seq.***
**On behalf of Plaintiff Cleo Holz and the Wisconsin Subclass**

856.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

857.    Plaintiff Cleo Holz brings this claim individually and on behalf of the Wisconsin Subclass.

858.    At all relevant times, Plaintiffs, Class members, Wisconsin Subclass members, and Defendants were "persons" within the meaning of Wisconsin Statutes. *See* Wis. Stat. § 990.01.

859.    Wis. Stat. § 100.18 prohibits the use of fraudulent representations by a person with the intent to sell, distribute, or increase the consumption of merchandise or anything offered by such person, directly or indirectly, to the public—the prohibition includes but is not limited to any advertisement, statement, representation of any kind to the public relating to the purchase, sale, or use of the merchandise which advertisement, statement, or representation is untrue, deceptive, or misleading.

860.    Defendants willfully engaged in fraudulent, untrue, deceptive, and/or misleading acts as described in the allegations above.

861.    As a result, Defendants' conduct violates Wis. Stat. §§ 100.18 Defendants' branding of the Recalled Devices represented that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to toxic PE-PUR Foam.

862.    Defendants' omissions in violation of Wis. Stat. §§ 100.18 83 were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the Wisconsin Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic PE-PUR Foam which is dangerous to consumers' health. Plaintiffs, the Class, and the Wisconsin Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

863.    If Defendants had disclosed that the Recalled Devices contained toxic PE-PUR Foam and were dangerous to consumers' health and were of substandard quality, Plaintiffs, the

Class, and the Wisconsin Subclass would have been aware that the Recalled Devices contained toxic PE-PUR Foam and were of substandard quality, and Plaintiffs, the Class, and the Wisconsin Subclass would not have purchased Defendants' Recalled Devices.

864.    Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

865.    Plaintiffs, the Class, and the Wisconsin Subclass relied to their detriment on Defendants' omissions in purchasing the Recalled Devices.

866.    The Wisconsin Subclass requested relief including, *inter alia*, Awarding Plaintiffs and Class members two times their damages, and reasonable attorneys' fees and costs.

**FORTY-SECOND CLAIM FOR RELIEF**

**WYOMING CONSUMER PROTECTION ACT**
**Wyo. Stat. Ann. §§ 40-12-101, *et seq.***
**On behalf of Plaintiff Jodi Wolfe and the Wyoming Subclass**

867.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

868.    Plaintiff Jodi Wolfe brings this claim individually and on behalf of the Wyoming Subclass.

869.    At all relevant times, members of the Wyoming Subclass and Defendants were "persons" within the meaning of Wyoming's Consumer Protection Act ("Wyoming CPA"). *See* Wyo. Stat. Ann. § 40-12-102(a)(i).

870.    Wyoming's CPA prohibits any "unfair or deceptive acts or practices."

871.    Wyoming's CPA forbids, *inter alia*, the: (1) representing that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; (2) representing that

merchandise is of a particular standard, grade, style or model, if it is not; and (3) engaging in unfair or deceptive acts or practices.

872.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by Wyo. Stat. Ann. § 40-12-102(a)(vi)) in violation of Wyo. Stat. Ann. § 40-12-105(a)(xv) as described in the allegations above.

873.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were acts or practices in the conduct of trade or commerce.

874.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

875.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Wyoming Subclass.

876.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Wyoming Subclass has little alternative but to submit, which caused consumers substantial injury.

877.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of a product is responsible for ensuring that it is fit for human use.

878.    The Wyoming Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

879.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

880.    Plaintiffs provided notice to Defendants pursuant to Wyo. Stat. Ann. § 40-12-109 by sending a certified letter containing the basis of Plaintiffs' claims on August 19, 2021 and sending an electronic copy to Defendants' counsel of record via email on the same date.

881.    The Wyoming Subclass requests relief including, *inter alia*, damages, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A.  An order certifying this action and the Class and Subclasses requested herein as a class action, designating Plaintiffs as the representatives of the Class and Subclasses, and appointing Plaintiffs' counsel as counsel to the Class and Subclasses;

B.  An order declaring that Defendants' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of Alabama, Arizona, California, Connecticut, Florida, Idaho, Illinois, Louisiana, Maryland, Minnesota, Mississippi, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Texas, Virginia, Washington,

Wisconsin, and Wyoming consumer protection statutes, and that Philips is liable to Plaintiffs, members of the Class, and members of the Subclasses, as described herein, for damages arising therefrom;

C.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

D.  A judgment awarding Plaintiffs, members of the Class, and members of the Subclasses all appropriate damages, in an amount to be determined at trial;

E.  A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate including, but not limited to, restitution, disgorgement, and requiring Defendants to develop, implement, and maintain a medical monitoring program for members of the Class and Subclasses.

F.  A judgment awarding Plaintiffs, members of the Class, and members of the Subclasses prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiffs, members of the Class, and members of the Subclasses costs and fees, including attorneys' fees, as permitted by law; and

H.  Grant such other legal, equitable or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED:        December 30, 2021        Respectfully submitted,

*/s/ Kelly K. Iverson*
Gary F. Lynch
Kelly K. Iverson
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246

David S. Golub (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

Joseph P. Guglielmo (BBO# 671410)
Erin G. Comite (*pro hac vice* forthcoming)
Alex Outwater (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com